HARTFORD NATIONAL BANK & TRUST COMPANY, Trustee, and Philips Laboratories, Inc., Appellants,

v.

HENRY L. CROWLEY & COMPANY, Inc.

No. 11369.

United States Court of Appeals, Third Circuit.

Argued Nov. 19, 1954.

Decided Feb. 11, 1955.

Arthur G. Connolly, Wilmington, Del. (William A. Consodine, Crummy, Consodine & Gibbons, Newark, N. J., Thomas Cooch, Connolly, Cooch & Bove, Wilmington, Del., on the brief), for appellants.

Thomas F. Reddy, Jr., New York City (Shanley & Fisher, Newark, N. J., Pennie, Edmonds, Morton, Barrows & Taylor, Willis H. Taylor, Jr., Sullivan & Cromwell, Henry N. Ess, III, New York City, on the brief), for appellee.

Before GOODRICH, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

Philips Laboratories, Inc., is the exclusive licensee of certain patents owned by the Hartford National Bank and Trust Company as trustee for N. V. Philips' Gloeilampenfabrieken et al., a corporation of The Netherlands.

Philips charged Henry L. Crowley & Company, Inc., with infringement of some of these patents, whereupon Crowley brought actions in the District Court for the Southern District of New York against Philips and Hartford, requesting declarations of noninfringement and invalidity of the patents.[1] Hartford, the trustee-owner of the patents, was not amenable to service in New York, and was not made a party to the action. Philips, without joining Hartford, filed a counterclaim, alleging infringement by Crowley. Philips also alleged that it was an exclusive licensee with the right to prosecute infringers. While the New York action was pending, Philips, along with Hartford, commenced an action in the federal district court of New Jersey against Crowley, from which this pres-

---

1. We are concerned with only three of Philips' patents which are in issue in New York, Philips' patents Nos. 2,452,529, 2,452,531, and 2,579,978. Civil Action No. 66–186 and Civil Action No. 72–382, involving these patents, have been consolidated with a third, Civil Action No. 84–373.

ent appeal was taken. An amended complaint in the New Jersey action contained two counts. The first count charged that Crowley had infringed three of plaintiffs' patents and sought an injunction against further infringement and general damages for past infringement. The three patents were among the patents which were in issue in the pending New York action. The second count requested a declaratory judgment that a patent owned by Crowley was invalid.[2] Acting upon motions by the defendant Crowley, the district court stayed all proceedings on count one, pending disposition of the New York action and dismissed count two because the allegations did not present an actual controversy. A motion by the plaintiffs asking that Crowley be enjoined from prosecuting the New York declaratory judgment action was denied.[3]

We will first consider the dismissal of the second count. In the second count of their complaint, plaintiffs allege that the defendant Crowley, when confronted with a charge of infringing plaintiffs' three patents, made defensive assertions in reply which contained an implicit charge that the operations of plaintiffs' licensees infringed the Crowley patent and were not within the scope of Philips' patent.

The defensive assertions made by Crowley were that Crowley's products did not infringe Philips' patents but were described and protected by Crowley's own patent, and the composition and method described in the Crowley patent did not infringe Philips' patent. These are the only assertions allegedly made by Crowley.[4]

Philips reasons that since its complaint alleged that the products of its licensees are similar or identical to Crowley's products, Crowley's alleged assertion that the Crowley products were protected by the Crowley patent has the effect of charging that the products of Philips' licensees infringe the Crowley patent, and that the products of Philips' licensees are not within the scope of Philips' patents. This, they say, jeopardizes Philips' royalty agreements with its licensees and entitles them to a declaratory judgment.

But there is no allegation that Crowley ever asserted that the products of Philips' licensees are identical to Crowley's products. If anything, Crowley's assertions implicitly deny any similarity. The identity of products is claimed by Philips, not Crowley. Because of its

2. Crowley patent No. 2,575,099.

3. Hartford Nat. Bank & Trust Co. v. Henry L. Crowley & Co., D.C.N.J.1954, 118 F.Supp. 899.

4. During oral argument, in reply to specific questioning by the court, counsel for Philips said that the only assertions by Crowley upon which they relied were contained in the following letter, which assertions were repeated on other occasions by Crowley. Plaintiffs allege no assertions by Crowley other than those which are found in the following letter:
"November 15, 1951
"Mr. F. Seibezeder, Vice President,
Philips Laboratories, Inc.,
100 East 42nd St.,
New York 17, N. Y.
"Dear Mr. Seibezeder:
"Enclosed you will find a copy of U. S. Patent No. 2,575,099 granted November 13th, 1951, which describes the composition of and method of making this company's magnetic material with respect to which you sought to have this company enter into the license referred to in your letter of April 25th, 1951.
"It was and is the company's position that the composition and method described and claimed in the patent, and the magnetic material and articles formed thereof, made and sold by the company under the patent, do not involve infringement of any patent rights of the Philips Company, specifically those referred to in your letter of April 25th.
"Since you indicated at our last meeting a desire to avoid the continuance of the suit now pending in the New York Federal Court, and now that the patent has issued, I offer your company the opportunity to terminate the litigation on the basis of a consent judgment of non-infringement limited to this company's products of the patented composition and method, the details of the consent to be left to our respective counsel.
"Yours very truly,
Henry L. Crowley /s/"

belief, Philips may fear that at some time in the future Crowley *may* also think the products are identical and at that time *might* charge infringement by Philips' licensees, but that has not happened yet, so far as we know from the complaint's allegations. Philips' fears are merely conjectural. By no twist of logic or words can Crowley's alleged assertions alone be read to mean what Philips insists they mean.

Though it be true, as Philips points out, that a charge of infringement or threat of suit by a patentee may be craftily phrased and need not be given directly, Treemond Co. v. Schering Corp., 3 Cir., 1941, 122 F.2d 702; Dewey & Almy Chemical Co. v. American Anode, Inc., 3 Cir., 1943, 137 F.2d 68, such is not the case here. We can find no charge or threat in Crowley's alleged assertions, and without such charges or threats Crowley's patent cannot be the subject matter of a controversy which can sustain a declaratory judgment action. See Treemond Co. v. Schering Corp., supra, 122 F.2d at page 705; Dewey & Almy Chemical Co. v. American Anode, Inc., supra, 137 F.2d at page 70.

Whether or not the district court abused its discretion in refusing to enjoin Crowley from prosecuting the New York action is the question raised as to count one. Philips says that the New Jersey action should not have been stayed pending disposition of the New York action because (1) the Crowley patent is not in issue in the New York action and therefore only the New Jersey district court can adjudicate all the issues between the parties; (2) the New Jersey forum is more convenient for the parties; and (3) Hartford, an indispensable party, is not a party to the New York action but is a party in the New Jersey action.

Since we decide that the Crowley patent is not properly in issue in the New Jersey district court, the first reason assigned by Philips need not detain us. Philips has also failed to show any abuse of discretion by the district court in concluding that the New York forum is as convenient as the New Jersey forum.[5]

Whether Hartford is an indispensable party to the New York action is the only other question, and we think that it was correctly decided by the district court.

By an agreement of January 1, 1951, which is set out in full in the margin,[6]

5. Plaintiffs point out that Crowley's principal place of business is in New Jersey, as is the home of Philips' vice-president and secretary, but Crowley chose the New York forum and Philips' laboratories and offices are in New York. We can also take judicial notice of the stone's throw distance between Foley Square and Newark.

6. Except for introductory clauses and signatures, the agreement provided:

"Article I.

"The Agreement of the date of January 1, 1946 between the parties hereto and any amendments thereof is herewith terminated by mutual consent as of December 31, 1950, however, without prejudice

"(a) to any and all Assignments of License Agreements made under it, which Assignments shall remain in force and

"(b) to the payments of any sum either party may owe to the other under said Agreement.

"Article II.

"Subject to all prior commitments and to all provisions and conditions of this Agreement, Hartford herewith grants and agrees to grant to PLI under any and all of the U. S. patent applications and U. S. patents which Hartford owns at the date hereof and shall own during the term of this Agreement an exclusive license for the life of such patents to make use and sell devices using such patents and patent applications, including the right to grant exclusive and nonexclusive licenses to third parties.

"Article III.

"(a) During the term of this Agreement PLI shall have the right to prosecute infringements of the patents under which this license is granted and agreed to be granted and to defend such patents in suits brought under the Federal Declaratory Judgment Act. The expense of all such litigation shall be carried by PLI to which, on the other hand, all recoveries shall accrue.

Hartford granted to Philips "an exclusive license for the life of such patents to make use and sell devices using such patents and patent applications, including the right to grant exclusive and non-exclusive licenses to third parties."

By its terms the agreement was to terminate in 1960. Because of this termination date, Philips contends that Hartford has such an interest in the patents that it is an indispensable party. But although the agreement terminates in 1960, until that time Philips is free to grant exclusive licenses for the life of the patents. This is quite clear from the terms of the agreement. Since Philips has an exclusive license as to the patents (at least until 1960) and until that time is free to grant exclusive licenses to third parties, we do not feel that Hartford's interest is sufficient to make it indispensable to the New York action. Hartford's interest is contingent and future, because if Philips should grant exclusive licenses for the life of the patents, in 1960, when Philips' authority terminates,

"(b) Hartford shall to the best of its abilities from time to time deliver all documents obtainable and needed for such suits and it shall generally grant to PLI all reasonable assistance regarding them. Whenever PLI deems it necessary that Hartford be made a party to any of the suits to which this Article refers, it shall have the right to do that.

"Article IV.

"The expenses pertaining to the prosecution of the U. S. patent applications and the maintenance of the U. S. patents under which PLI is and shall be licensed hereunder shall be borne by PLI.

"Article V.

"PLI obligates itself to utilize the rights granted to it under this Agreement to the benefit of the interested industries (and also the U. S. Government) by granting to them licenses under appropriate terms and conditions, whereby it shall be understood that PLI shall not have the right to grant to anyone royalty-free licenses.

"Article VI.

"During the period January 1, 1951 to December 31, 1955 PLI shall compensate Hartford in respect to each calendar year in accordance with the formula.

"¼ (R—C)

"In said formula

"R stands for the sum of net royalties actually received by PLI in each of these calendar years and

"C for the total cost of PLI's Patent —and Licensing Departments in each calendar year to which the accounting relates.

"The compensation which PLI shall pay to Hartford during the period January 1, 1956 to December 31, 1960 shall be negotiated in 1955.

"During the first half-year of each calendar year the payments pertaining to the preceding year shall become due.

"Article VII.

"PLI agrees that it will afford at any and all times Hartford or its duly authorized agent or representative the opportunity to inspect all its records and books of accounts and generally to inspect PLI's activities in regard to the performance of this agreement.

"Article VIII.

"Upon termination of this Agreement, regardless whether in accordance to Article IX or X, all rights granted hereunder to PLI shall revert to Hartford.

"Article IX.

"In case PLI resolves its dissolution or in case it files a petition in bankruptcy, or in case a petition of bankruptcy is filed against PLI and said petition is not dismissed within ninety (90) days thereafter, or if PLI is adjudged bankrupt or shall make a general assignment for the benefit of its creditors or any assignments or transfer in the matter of such a general assignment, or in case a receiver is appointed for its business, all the rights of PLI under this Agreement and license shall terminate forthwith without prejudice to Hartford's right to recover any royalties or other sums due at the time of such termination of PLI's rights.

"Article X.

"This Agreement shall enter into force on January 1, 1951 and expire on December 31, 1960, however without prejudice to Hartford's right to recover any sums becoming due under this Agreement after the date of its expiration.

"Article XI.

"This Agreement shall be binding on each of the legal representatives of the parties hereto and on Hartford's successor."

The agreement dated January 1, 1946, mentioned in Article I, was not printed in plaintiff's appendix.

Hartford's interest, if any, would be limited to possible royalties.

In Waterman v. Mackenzie, 1891, 138 U.S. 252, 256, 11 S.Ct. 334, 34 L.Ed. 923, the Supreme Court said that if a patentee grants an exclusive license for life, limited as to territory, the patentee is not an indispensable party to a suit involving the patent. Here, the limitation is as to time, rather than territory, but if the patentee is not indispensable although he has a present interest which may be territorially very significant, he should not be indispensable when his interest is only a contingent future interest.

There was no abuse of discretion by the district court in staying the New Jersey action and refusing to enjoin prosecution of the New York action. The judgment of the district court will be affirmed.