**The GENERAL TIRE & RUBBER COM-PANY, Plaintiff,**

v.

**JEFFERSON CHEMICAL COMPANY, Inc., Defendant.**

**No. 68 Civ. 1227.**

United States District Court
S. D. New York.
March 20, 1969.

Watson, Leavenworth, Kelton & Taggart, New York City, by John T. Kelton, Herbert Blecker, New York City, for plaintiff.

Kane, Dalsimer, Kane, Sullivan & Smith, David H. T. Kane, New York City, Hofgren, Wegner, Allen, Stellman & McCord, Chicago, Ill., by James R. Sweeney, Chicago, Ill., and Carl G. Ries, Houston, Tex., for defendant.

## OPINION

TYLER, District Judge.

In a memorandum filed October 14, 1968, I deferred until trial determination of plaintiff's ("General Tire's") motion in this case to dismiss, or in the alternative to strike, defendant's ("Jefferson's") counterclaim for a declaration of invalidity of patent No. 3,072,582, General Tire's so-called "Frost patent". General Tire now moves under Rule 9(m) of the General Rules of this court for reargument.

The parties at last having made available to me the depositions and exhibits on which their positions on the motion to dismiss are based and which were not produced prior to October 14, the motion to reargue should be and is granted. For reasons to be discussed, however, I essentially adhere to the ultimate conclusion reached in the earlier memorandum.

General Tire commenced this declaratory judgment action in this court on March 26, 1968 seeking to hold Jefferson's so-called "Heiss patent" invalid and not infringed. In its answer to the complaint, Jefferson asserted a general denial, several affirmative defenses and two counterclaims, one for infringement of its Heiss patent and the second seeking a declaratory judgment of invalidity

of the aforementioned Frost patent belonging to General Tire. Thereafter, General Tire brought this motion without any supporting affidavits or papers. Apparently by agreement between themselves, counsel set out to take depositions and engage in discovery. As suggested hereinabove, the parties first came before the undersigned for argument on September 17, 1968. Through inadvertence, counsel never made available until this motion for reargument to the court any depositions or documents which relate to General Tire's contention that there is no justiciable controversy with respect to the second counterclaim alleged by Jefferson.[1] For this reason, among others, I denied General Tire's original motion for summary dismissal of that counterclaim.

The Frost patent, which is the object of Jefferson's second counterclaim, is directed to a system or process for making urethane foam which has a number of characteristics, including those which make it desirable for insulation in walls of structures and containers. For present purposes, it is not necessary to fully describe the process or system as indicated by the Frost patent. It is useful here to note, however, that one of the several components that goes into the urethane reaction as identified by the patent is an "essentially hydroxyl terminated polyether polyol".

Jefferson, a wholly-owned subsidiary of American Cyanamid Company and Texaco, Inc., is engaged in the business of manufacturing and selling various chemicals, one type of which may be generally described as a polyether polyol. Jefferson in recent years has had a number of customers which are capable of reacting the polyols purchased from Jefferson with other components not sold by Jefferson to produce a polyurethane foam. Consequently, General Tire has communicated with a number of Jefferson customers to indicate that their systems of producing polyurethane foams infringe on the Frost patent. General Tire, not surprisingly, has also sought to have these customers execute nonexclusive licenses under the Frost patent and to pay royalties as provided therein. There have also been communications between General Tire and Jefferson about the possible execution by Jefferson of a nonexclusive license under this particular patent.

In simple terms, then, Jefferson is maintaining in its second counterclaim that General Tire has threatened it with infringement of the Frost patent and that thus there is a justiciable controversy ripe for resolution by this court in the same litigation involving Jefferson's Heiss patent. Conversely, General Tire asserts that it has never threatened Jefferson with infringement of the Frost patent and that its dealings with some of Jefferson's customers are of no legal consequence sufficient to support a declaratory judgment claim by Jefferson.

Due to the parties' reliance on depositions, affidavits, and exhibits obtained during discovery, the motion despite the labels used by counsel, must be treated as one for summary judgment under Rules 12(b) and 56, F.R.Civ.P. As such, General Tire, the movant, must show a state of uncontradicted facts which establish the nonexistence of a justiciable controversy. Jefferson, on the other hand, need show no facts which support its counterclaim at this stage, unless General Tire's evidence, if uncontradicted or unexplained, would entitle it to judgment. Westinghouse Electric Corp. v. Aqua-Chem, Inc., 278 F.Supp. 975 (E.D.Pa.1967). Consequently, on

---

1. More particularly, it appears that some of the depositions were filed a day or two after September 17 in the clerk's office with no indication that these materials should be sent up to my chambers.

this motion, I must determine whether such a state of uncontradicted facts exists, and if so, whether Jefferson has sufficiently contradicted or explained the evidence as to defeat the motion.

■ It has been stated that several elements must be considered in determining whether a justiciable controversy has been presented in a patent case: (1) the position of the declaratory plaintiff; (2) the nature of the threat made against him; (3) the party making the threat and whether his action can be attributed to the patent owner. See Wembley, Inc. v. Superba Cravats Inc., 315 F.2d 87, 89 (2d Cir. 1963); Borchard, Declaratory Judgments, pp. 803–804 (2d ed. 1941). Although not all the cases are clear in this regard, it can be said that these three elements usually boil down to two requirements which must be met in the conjunctive: a showing of (a) actual manufacture, use or sale by the petitioner, and (b) charges of infringement by the patentee or his successor in interest. More recent cases have adopted the position espoused by Professor Borchard that the two requirements can also be met if the declaratory plaintiff "is about to infringe or take some action which is prejudicial to the interests of the patentee, and * * * he is then charged or put on notice that his action is attacked as an infringement, present or prospective." Borchard, supra, at p. 807. This seeming liberalization of the requirements, however, does not appear to have eliminated the necessity for presenting proof of the concurrence of some form of present or potential infringement of the subject patent and some indication that the patentee has asserted a claim of infringement. Thus, a justiciable controversy has been held to exist in an action to declare a patent invalid where the patentee threatened suit and the plaintiff only conducted a trial run of the infringing product, Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 200 F.2d 876 (2d Cir.

1952); conversely, it has been held not to exist where the patentee declared plaintiff's product to be covered by the patent and the plaintiff merely "designed" a "proposed" necktie (Wembley, Inc. v. Superba Cravats, Inc., 315 F.2d 87 (2d Cir. 1963)). Similarly, in Hartford National Bank & Trust Co. v. Crowley & Co., 219 F.2d 568 (3d Cir. 1955) where the fact that the plaintiff was presently producing the allegedly infringing product was established but the question of whether the patentee had directly or indirectly charged the plaintiff with infringement was not, the court noted that:

"Though it be true * * * that a charge of infringement or threat of suit by a patentee may be craftily phrased and need not be given directly, * * * without such charges or threats * * * [the] * * * patent cannot be the subject matter of a controversy which can sustain a declaratory judgment action." 219 F.2d at p. 571.

A recent indication in our circuit of the continuing vitality of this rule appears in Drew Chemical Co. v. Hercules, Inc., 407 F.2d 360 (2d Cir. 1969). There a declaratory judgment action commenced by the admitted manufacturer of a product alleged by it to infringe the patent attacked was dismissed as presenting no "actual controversy" when the court concluded that no charge of infringement or "threat to sue" had been made by the patentee. The Court of Appeals noted that, absent such a charge or threat, the case presented at best a mere business argument.

Applying these precedents to the instant case, I conclude that General Tire's motion for summary dismissal of the second counterclaim must be denied because there has been no clear showing on uncontradicted evidence that at least one of the two basic requirements is absent in this case. Put differently, I read the depositions and exhibits presented on

this motion not to negate the possibilities that General Tire has made a charge of infringement against Jefferson, and that Jefferson is in the position of being a potential infringer of the General Tire patent.

Jefferson has argued in its brief and submitted depositions and documents tending to show that (1) there was between General Tire and Jefferson an exchange of correspondence (including the offer by General Tire to Jefferson of a license under the patent), the import of which is that General Tire had impliedly charged Jefferson with infringement of the Frost patent; (2) under the license offered by General Tire, the payment of past royalties was required;[2] (3) General Tire to date has brought at least two suits alleging infringement of the Frost patent by other manufacturers of rigid polyurethane foam systems identical to those involved here; (4) Jefferson's customers and potential customers have demanded "hold harmless" agreements as part of any arrangement for the purchase of polyols sold by Jefferson for the production of rigid polyurethane foams; (5) certain of these customers have importuned Jefferson to reduce its prices to them of polyether polyols in order to reflect and compensate for royalties which such customers are paying to General Tire under nonexclusive licenses to the Frost patent; and (6) in addition to producing for sale an ingredient used by Jefferson's customers for the production of systems admittedly covered by the

Frost patent, Jefferson since 1965, well in advance of the present suit, has expended in excess of one million dollars in preparing to produce such systems through the planning of a plant, the use of customer sampling and marketing surveys, and by offering such systems for sale.[3]

■ Although I recognize that there may be strong policy reasons for deciding such issues as that presented upon this motion wherever possible prior to trial, see, e. g. Drew Chemical Co. v. Hercules, Inc., *supra*, I am constrained to rule that here summary disposition is inappropriate. To begin with, whatever may be unclear from the depositions and documents in this case, it is plain that General Tire has made no concession of noninfringement. Moreover, I read the depositions and documents to present the possibility that there is a combination of circumstances from which Jefferson may prove that infringement has been indirectly charged by General Tire. This alone, according to the cases heretofore discussed, is sufficient to defeat General Tire's motion for summary judgment. As a practical matter, moreover, it is very difficult, if not impossible, for a federal district judge to evaluate depositions and exhibits in a highly technical chemical process patent area such as the one here presented and make a hard and fast determination that the second counterclaim should be dismissed prior to trial. I might also observe that despite the

2. In Smith-Corona Merchant, Inc. v. American Photocopy Equip. Co., 214 F.Supp. 348 (S.D.N.Y.1962), this court said of such a requirement:
   "There would seem to be no basis for asking for royalties on sales made by plaintiff prior to the execution of a license agreement unless it were the defendant's claim that plaintiff had infringed the patent by these prior sales." At p. 353.

3. As to this last activity, Jefferson has alleged that the systems presently offered by it are similar to those charged by General Tire in a separate suit against Isocyanate Products, Inc. in the federal district court in Wilmington, Delaware as infringing the Frost patent, the subject of this litigation.
   It should be added here that Jefferson's board of directors apparently has not formally and finally determined to go into actual production of the systems—or, more precisely, that the board had not formally approved the plan prior to the submission of the original motion in September, 1968.

**612**

generally sound teaching of the cases, some of which have been already mentioned, that the courts should be reluctant to sustain declaratory judgment actions in disputes which really are no more than business arguments. I cannot be certain from the present record that Jefferson is not a seller or manufacturer whose operations cut squarely across the sphere of the Frost patent. Put differently, I cannot blithely assume that Jefferson seeks no more than an advisory opinion prior to entering production of the polyurethane system or systems. Conceding arguendo that the trier of the facts in this case may ultimately conclude that this essentially is what Jefferson is trying to achieve, I believe that it would be improvident for me to presently ignore the time, money and efforts expended by Jefferson in marketing polyols and preparing to enter production of polyurethane foams. Similarly, I believe that snap judgments cannot be made on this record respecting the apparent difficulties Jefferson has experienced with certain long-standing customers which, faced with General Tire's aggressive protection and exploitation of its Frost patent, are seeking "hold-harmless" agreements from Jefferson or reduced prices for Jefferson's polyols in order to compensate for royalty payments paid by such customers to General Tire.

Finally, since General Tire has indicated in its most recent brief that a denial of this motion to dismiss the second counterclaim prior to trial would be an abuse of discretion subject to the breach of a writ of mandamus, see Erie Bank v. United States District Court for the District of Colorado, 362 F.2d 539 (10th Cir. 1966), I can only observe that I believe that the teaching of that case is inapposite to the facts and circumstances here presented.

Motion for reargument is granted; motion to summarily dismiss the second counterclaim is denied. It is so ordered.