## DEWEY & ALMY CHEMICAL CO. v. AMERICAN ANODE, Inc.

### No. 8292.

Circuit Court of Appeals, Third Circuit.

Argued May 18, 1943.

Decided July 13, 1943.

Writ of Certiorari Denied Oct. 11, 1943.

See 64 S.Ct. 70, 88 L.Ed. ——.

George P. Dike, of Boston, Mass. (Morris, Steel, Nichols & Arsht, of Wilmington, Del., George P. Dike and George P. Towle, Jr., both of Boston, Mass., and Hugh M. Morris and Alexander Nichols, both of Wilmington, Del., on the brief) for plaintiff-appellant.

Harrison F. Lyman, of Boston, Mass. (Edgar H. Kent, of Boston, Mass., and Arthur G. Connolly, of Wilmington, Del., on the brief), for appellee.

Before BIGGS, MAGRUDER, and GOODRICH, Circuit Judges.

MAGRUDER, Circuit Judge.

Dewey & Almy Chemical Company appeals from an order for summary judgment which dismissed its complaint for a declaratory judgment against American Anode, Inc. The ground of dismissal was that there did not appear to be any "actual controversy" between the parties within the meaning of the Declaratory Judgment Act, 48 Stat. 955, 28 U.S.C.A. § 400.

According to the allegations of the complaint, defendant is the owner of United States Patents Nos. 1,825,736 to Klein & Szegvari and No. 1,996,051 to Twiss. These are process patents relating to the manufacture of form-shaped rubber goods by coating molds with a coagulent and then dipping them in a latex compound. Plaintiff has practised commercially three methods of producing rubber goods from latex by this so-called "coagulent-dip" process. One of these methods is now in commercial use. Plaintiff intends to resume commercial use of the other two

methods when materials are available. The complaint recites: "Defendant has at various times, to the plaintiff or otherwise, asserted such a scope for the claims of its said Letters Patent that said processes practiced by plaintiff would infringe said claims, if valid, and defendant has led plaintiff to believe that it will sue plaintiff if it does not abandon said processes, or take a license under said Letters Patent, but defendant has failed to bring suit against plaintiff for infringement thereof. Wherefore there is a conflict of asserted rights between the parties, and an actual controversy exists." The prayer is for a judgment declaring the two patents to be invalid, or ·if valid, that the patents are not infringed by the plaintiff in practising its coagulent-dip processes described in the complaint.

Defendant moved under Rule 56(b) and (c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, for a summary judgment of dismissal. In support of the motion, defendant submitted an affidavit by Raymond W. Albright, its president. Albright deposed that prior to this suit defendant had not charged plaintiff with infringement of the said patents nor threatened plaintiff with any suit for infringement; that prior to reading the complaint in this case defendant had no knowledge or reason to know that plaintiff was using or had used any coagulent-dip process commercially; that back in 1937 plaintiff opened negotiations with defendant for a license under the patents; that during these negotiations plaintiff informed defendant that plaintiff was not using any coagulent-dip process but "that they might like a license under our patents so that they could, if they chose, use a coagulent dip process for the manufacture of other types of goods for which such a process might be better suited"; that negotiations broke down through inability of the parties to agree upon license terms; that Albright wrote to plaintiff in November, 1937, that if at a later date "you find you wish .to work under our process and patents, we would be glad to discuss the matter with you again"; that thereafter he heard nothing further from plaintiff on the subject, "and was greatly surprised when this complaint was filed."

In opposition to the motion for summary judgment plaintiff filed two affidavits by Theodore C. Browne, head of plaintiff's patent department. These affidavits did not directly controvert any of the statements of fact contained in the Albright affidavit. Browne deposed as to the reasons why the terms of license offered to plaintiff in 1937 were inacceptable to the latter. He further deposed that in January, 1940, Anode filed suit against the Lee-Tex Rubber Products Company of Chicago, Illinois, charging infringement of the same patents by the use of a coagulent-dip process;[1] that in that suit Mr. Albright testified that after extended negotiations the Lee-Tex Company declined to take a license "and as a result of that" the suit against Lee-Tex was brought. Further, Browne deposed that he attended the trial of that suit; that in a conversation which took place in the corridor Mr. Albright "said in effect that it was a disappointment to him that the manufacturers did not recognize the great contribution which Anode had made to the rubber dipping art and now that the manufacturers were ganging up on them they had to put a stop to it."

The sole question before us is whether on the facts disclosed the court below had jurisdiction to issue a declaratory judgment as prayed in the complaint.

Prior to the passage of the Declaratory Judgment Act, the patentee was in a position to make oppressive use of his asserted monopoly while carefully avoiding the test of litigation with an alleged infringer. See Borchard, Declaratory Judgments (2d ed.) p. 803; Treemond Co. v. Schering Corp., 3 Cir., 1941, 122 F.2d 702, 703, 704. Further, the patentee might, in his own good time, sue the alleged infringer for an accounting, after large damages on account of a possible infringement had accrued. The alleged infringer could not take the initiative in litigation to challenge the validity or scope of the patent.

In providing the remedy of a declaratory judgment it was the Congressional intent "to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued." E. Edelmann & Co. v. Triple-A Specialty Co., 7 Cir., 1937,

[1] The district court held the patents valid and infringed. American Anode, Inc., v. Lee-Tex Rubber Products Corp., D.C., N.D.Ill., 1942, 45 F.Supp. 750. An appeal is pending.

88 F.2d 852, 854. This court has emphasized that the Act should have a liberal interpretation, bearing in mind its remedial character and the legislative purpose. Alfred Hofmann, Inc., v. Knitting Machines Corp., 3 Cir., 1941, 123 F.2d 458, 460; Treemond Co. v. Schering Corp., supra, 122 F.2d at page 703.

The statutory provision limiting declaratory judgments to "cases of actual controversy" is no more than a recognition that the federal judicial power extends only to "cases" or "controversies" in the constitutional sense. Ætna Life Insurance Co. v. Haworth, 1937, 300 U.S. 227, 239, 240, 57 S.Ct. 461, 464, 81 L.Ed. 617, 108 A.L.R. 1000. This constitutional requirement, as applied to declaratory judgments, is not interpreted in any narrow or technical sense. Ætna Life Insurance Co. v. Haworth, supra; Maryland Casualty Co. v. Pacific Coal & Oil Co., 1941, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826. There must be a concrete case touching the legal relations of parties having adverse legal interests, and susceptible "of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged." The distinction is between a case "appropriate for judicial determination" on the one hand, and a "difference or dispute of a hypothetical or abstract character" on the other. Ætna Life Insurance Co. v. Haworth, supra, 300 U.S. at pages 240, 241, 57 S.Ct. at page 464, 81 L.Ed. 617, 108 A.L.R. 1000. This distinction, as the court pointed out in Maryland Casualty Co. v. Pacific Coal & Oil Co., supra, 312 U.S. at page 273, 61 S.Ct. at page 512, 85 L.Ed. 826, "is necessarily, one of degree."

It is obvious that a person not now engaged in possible infringing conduct, and having no immediate intention of doing so, but having an academic interest in the law of patents, could not obtain a declaratory judgment against a patentee as to the validity or scope of the patent. Such a dispute would be of "a hypothetical or abstract character" not within the federal judicial power; issue would not be joined, in such a case, between persons having adverse legal interests.

This court said in the Treemond case, supra, 122 F.2d at page 705, that an "actual controversy" within the meaning of the Act "does not exist until the patentee makes some claim that his patent is being infringed." Perhaps this statement should be qualified so as to admit the possibility of declaratory judgment where the patentee has claimed that the manufacture of a certain product or the practising of a certain process would constitute an infringement and a person who is about to engage in such alleged infringing conduct seeks a declaration of his right to do so. See Borchard, supra, at page 807. But it may be conceded that "the mere existence of the patent is not a cloud on title, enabling any apprehensive manufacturer to remove it by suit." Borchard, ibid.

Here there is more than that. The patentee has used its patents as an economic weapon against other alleged infringers who declined to take a license. In its suit against the Lee-Tex Company, Anode has asserted that the coagulant-dip process practised by that company constitutes an infringement. It is not denied that Anode has thus publicly asserted such a scope for its patent claims as to embrace the similar methods practised commercially by Dewey & Almy. We think this assertion evidences the existence of a substantial controversy between Anode and Dewey & Almy (parties manifestly having adverse legal interests), "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal & Oil Co., supra, 312 U.S. at page 273, 61 S.Ct. at page 512, 85 L.Ed. 826. It is a fair inference that Anode in bringing suit against the Lee-Tex Company was counting on the in terrorem effect upon other manufacturers; this inference is strengthened by the remark of Anode's president quoted in Browne's affidavit.

Certainly the fact that Anode had never made any direct threat to sue Dewey & Almy is not conclusive of the problem. In E. W. Bliss Co. v. Cold Metal Process Co., 6 Cir., 1939, 102 F.2d 105, an actual controversy was held to exist although it was evident that the patentee was exerting every effort to avoid entanglement in litigation with the particular alleged infringer seeking the declaration. In Maryland Casualty Co. v. Pacific Coal & Oil Co., supra, a claimant brought an action of tort against an insured for injuries arising out of an automobile accident. Under the state law the claimant, if successful in obtaining a judgment against the insured, could enforce it by supplementary proceedings against the insurer. Before the tort action had proceeded to judgment the insurance

company brought a complaint against both the claimant and the insured seeking a declaration of non-coverage. The claimant demurred to the complaint on the ground that it did not state a cause of action against him. The district court sustained the demurrer and the circuit court of appeals affirmed. 6 Cir., 111 F.2d 214. Despite the fact that the claimant had not yet made any claim against the insurance company under the policy, the Supreme Court, on certiorari, held that an "actual controversy" existed between the claimant and the insurance company. These parties had adverse legal interests, though no claim had yet been made, and for the reasons stated by the court, it was deemed that the case was appropriate and ripe for judicial determination. In patent cases it has been held that an "actual controversy" may exist even though, for one reason or another, the patentee is disabled from maintaining any action against the particular alleged infringer seeking the declaration. Alfred Hofmann, Inc., v. Knitting Machines Corp., supra, 123 F.2d at pages 460, 461; Western Electric Co., Inc., v. Hammond, 1 Cir., 1943, 135 F.2d 283.

It is true that in the two cases last cited the patentee had started suit against a customer of the alleged infringing manufacturer. That emphasized the reality of the controversy and the immediacy of the alleged infringer's legal interest in obtaining a declaration clearing himself of the charge of infringement. But customers and prospective customers of an alleged infringer may also be scared off by suits against other alleged infringers engaged in doing the same thing.

The fact that Anode did not learn until the present complaint was filed that Dewey & Almy was practising the coagulant-dip process commercially does not negative the existence of a case of actual controversy between them. If Anode had published a printed notice or circular asserting that use of the described coagulant-dip processes constitutes an infringement of its patents this would undoubtedly mark the existence of an actual controversy between the patentee and all persons who engaged in practising the process, whether they were known to the patentee or not. See National Hairdressers' & Cosmetologists' Ass'n, Inc., v. Philad Co., D.C., 1940, 34 F.Supp. 264; Id., D.C., 1941, 41 F.Supp.

701, affirmed, 3 Cir., 1942, 129 F.2d 1020. Anode's suit against the Lee-Tex Company, with the broad scope asserted therein for its patent claims, constitutes equally effective notice to whom it may concern that they practise the process at their peril. In thus using the patent as a legal as well as an economic weapon Anode has put Dewey & Almy in the position where it must either (1) abandon the use of the process, (2) accept a license on terms which it deems disadvantageous, or (3) persist in piling up potential damages against the day when it may fit Anode's purposes to bring an infringement suit against it.

Though there is no decided case applying the Declaratory Judgment Act in a situation quite on all fours with the present, we think that the facts here disclosed bring the case within the scope and intendment of the Act and therefore that the court below had jurisdiction to entertain the complaint.

The order of the district court is reversed and the case is remanded to that court for further proceedings not inconsistent with this opinion.