**WESTINGHOUSE ELECTRIC CORPORATION**

v.

**AQUA–CHEM, INC.**

**Civ. A. No. 41282.**

United States District Court
E. D. Pennsylvania.

Aug. 25, 1967.

Woodcock, Phelan & Washburn, Philadelphia, Pa., for plaintiff.

Howson & Howson, Philadelphia, Pa., for defendant.

SUR MOTION TO DISMISS

KIRKPATRICK, Senior District Judge.

This is an action by the plaintiff, Westinghouse, for a declaratory judgment that three patents owned by the defendant, Aqua-Chem, Inc., are invalid, not infringed and not enforceable. Aqua-Chem has moved to dismiss the complaint on the ground that it does not allege the existence of any justiciable controversy. However, it makes it clear that the parties are competing manufacturers and it avers that Aqua-Chem has charged in writing that equipment like that offered for sale by Westinghouse infringes its patents and that Aqua-Chem has publicly declared that it "intends to enforce its patents" against Westinghouse or its customers. These allegations plainly spell out a justiciable controversy of the kind which the Declaratory Judgment Act was designed to settle. In the case of Dewey & Almy Chemical Co. v. American Anode, 137 F.2d 68, 70, the Court of Appeals for the Third Circuit said: "It is not denied that" (the patent owner) "has thus publicly asserted such a scope for its patent claims as to embrace the similar methods practised commercially by Dewey & Almy. We think this assertion evidences the existence of a substantial controversy * * * 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"

However, the parties have argued the case on the evidence adduced

in discovery proceedings and on affidavits submitted and the motion will be treated as one for summary judgment under Rule 12(b). In the present case, applying the principles governing motions for summary judgment, Aqua-Chem, the moving party, in order to succeed must show a state of uncontradicted facts which would establish that no justiciable controversy exists. On the other hand, Westinghouse need not show facts which support its complaint unless Aqua-Chem's evidence, if uncontradicted or unexplained, would entitle it to judgment.

The patents are mainly concerned with the desalination of sea water by means of multiple stage flash evaporation—a process by which heated sea water, or other liquid, is subjected to sub-atmospheric pressure so that it "flashes" into vapor and the vapor is passed over cooling tubes to condense it—the output of each stage producing the liquid for the input of the succeeding one.

Reissue Patent 25,232 is a method patent calling for the removal of a portion of the brine from one of the lower pressure stages of the evaporation apparatus and returning it to the first stage where it is mixed with fresh sea water and then recirculated. Patent 3,213,000, called the Long Tube patent is for apparatus in which the sequential evaporation and condensation of the various stages occurs in a single long tube passing longitudinally through the apparatus. Patent 3,192,131, called the Removable Tube Bundle patent, is for apparatus in which the tube bundles carrying the coolant can be assembled outside the shell and installed so as to be readily removable.

The large-scale desalination of water requires complex and expensive installations usually purchased and operated by very large industries, municipalities or the Government. They are anything but shelf items, and each installation is designed and built to fulfill the needs and wishes of the particular customer. Moreover, the customer usually either has or retains engineers who draw up specifications for the desired equipment, and suppliers must submit bids on apparatus which conform to these specifications. Westinghouse is such a supplier, as is Aqua-Chem.

Westinghouse argues that its position in such bidding is adversely affected by Aqua-Chem's patents because it has been and is likely to be called upon to bid on jobs whose specifications require the use of equipment which, Aqua-Chem maintains, is covered by the patents. This fact alone might not be enough to establish the existence of a justiciable controversy, but in the present case, there is more.

When Westinghouse built the plant known as the Chocolate Bayou installation, Aqua-Chem charged infringement of the original of its reissued method patent. After discussions between the parties in the course of which Aqua-Chem sought to persuade Westinghouse to take a license and Westinghouse refused, Aqua-Chem advised Westinghouse that it would not bring suit on the basis of that installation because it was constructed before the reissued patent was granted but that it would bring suit upon the completion of a plant which Westinghouse was building for Harvey Aluminum Company in the Virgin Islands. That suit has not as yet been brought but such forebearance does not establish that there is now no controversy between the parties. Crosley Corporation v. Hazeltine Corporation, D.C., 66 F.Supp. 893.

An example of a controversy about the 000 patent is what occurred in connection with an installation built for the Florida Keys Aqueduct Commission. During the course of negotiations Aqua-Chem by its attorneys notified the Commission's consulting engineers, as well as the Commission, that the proposed installation would infringe both the 232 and the 000 patents. Apparently the consulting engineers felt that it would or might since they so advised the Commission. Though Westinghouse received the award no suit has been brought.

This and the Chocolate Bayou incident are but two items in a voluminous record which one cannot read without concluding that a controversy exists between the parties with respect to the 232 and 000 patents.

The Removable Tube Bundle patent is on a somewhat different basis. Westinghouse has never offered for sale or manufactured any apparatus which it or Aqua-Chem believes to be covered by the patent. Although no such offer has actually been made and Aqua-Chem has never charged Westinghouse specifically with infringement of this patent, Westinghouse in its complaint says that it has been requested to bid upon and intends to offer for sale apparatus upon which one or more claims of the patent could be construed to read literally. Additionally, patent 131 might be described as a variant of the apparatus covered by Aqua-Chem's other patents, particularly 000. Taking into account the nature of the proceeding before me, and considering the closeness of the relationship of the three patents, I do not think that Aqua-Chem has satisfactorily established that a justiciable controversy does not exist as to patent 131.

Aqua-Chem appears to take the position that since the Westinghouse engineers whose depositions were taken testified that they did not use Aqua-Chem designs, but only Westinghouse designs, there is no real controversy. I have yet to see a declaratory judgment suit seeking a judgment for invalidity and non-infringement where the plaintiff has agreed that his product infringed the defendant's patent. The controversy does not arise because plaintiff believes it is infringing but because the defendant believes it is and intends to take measures to assert its rights.

■ Of course, it is well settled that the mere existence of patents which might limit commercial activities of the plaintiff is not sufficient to support a complaint for a declaratory judgment. As the Court in Sanford v. Kepner, 3 Cir., 195 F.2d 387, 390 said:

"But some manifest threat to the interests or interference with the activities of the petitioner beyond the issuance of a patent to another is required to create a controversy justiciable under the Declaratory Judgment Act between him whom the patent may injure and the patentee."

In the present case, the evidence before the Court, far from showing the absence of a controversy, makes it reasonably certain that in the foreseeable future, the activities of Westinghouse will enter into conflict with the rights which Aqua-Chem asserts under its patents.

The Court of Appeals for the Third Circuit has on several occasions dealt with situations comparable to that presented to this Court by the present case. In Simmonds Aerocessories, Limited v. Elastic Stop Nut Corporation, 3 Cir., 257 F.2d 485, the Court said:

"It has been held, however, that it is not essential that there be a direct threat of litigation in order to invoke the Declaratory Judgment Act. It is sufficient if such a threat is implicit in the attitude of the defendant * * * or if the plaintiff has notice that the defendant asserts that there is or will be an infringement."

See also Federal Telephone and Radio Corp. v. Associated Tel. & Tel., 3 Cir., 169 F.2d 1012.

■ Under the principles of these cases, it is clear that Aqua-Chem has failed to meet its burden of demonstrating that no justiciable controversy, as pleaded by Westinghouse, exists.

Aqua-Chem's motion to dismiss the complaint is denied.