**PRINTING PLATE SUPPLY CO. and Robert R. Myers, Jr.**

v.

**CURTIS PUBLISHING CO.**

**Civ. A. No. 42039.**

United States District Court
E. D. Pennsylvania.
Jan. 15, 1968.

**644**

Robert Trescher, Bruce B. Wilson, Philadelphia, Pa., for plaintiff.

Virgil E. Woodcock, Francis E. Shields, Philadelphia, Pa., for defendant.

## OPINION

MASTERSON, District Judge.

Plaintiffs' complaint in this action charges the defendant with infringement of four of plaintiffs' patents, United States Letters Patent Nos. 2,507,347, 2,800,856, 2,814,990 and 3,062,139. Defendant has filed an answer and a counterclaim seeking a declaration that these patents are invalid and not infringed by the defendant. In its counterclaim defendant also seeks a declaration that a fifth patent held by the plaintiff, United States Letters Patent No. 3,228,330, referred to hereinafter as the '330 patent, is invalid and not infringed by the defendant.

Plaintiffs presently have made a motion to dismiss that portion of defendant's counterclaim which relates to the '330 patent. Defendant opposes this motion preliminarily upon procedural grounds raised in its motion to strike. Defendant contends that plaintiffs' motion is not timely because it was not filed within the 20 day period prescribed by Rule 12(a) of the Federal Rules of Civil Procedure. The defendant contends that plaintiffs' failure to make their motion within this period constitutes a waiver of the defense under Rule 12(g).

The defendant filed his answer and counterclaim on February 13, 1967. Plaintiffs filed a Motion for a More Definite Statement under Rule 12(e) on February 27, 1967. Plantiffs did not file the present Motion to Dismiss, however, until July 26, 1967, over five months after the filing of Defendant's Counterclaim.

Rule 12(g) is intended to require consolidation of defenses and thus discourage delay and dilatory tactics. See, Moore, Federal Practice, Volume 2A, § 12.22, p. 2322, and Advisory Committee's Note, Proposed Amendments to Federal Rules of Civil Procedure, 34 F.R.D. 325, 373. However, since the Court has not yet ruled on plaintiffs' Motion for a More Definite Statement, plaintiffs' Motion to Dismiss clearly was made within the time limits prescribed by Rule 12(a) (2):

> " * * * if the court grants a motion for a more definite statement the responsive pleading shall be served withing 10 days after the service of the more definite statement."

Moreover, the waiver provisions of 12(g) relate only to defenses which were "then available" to the party making the original Rule 12 motion. This exception to the general operation of Rule 12(g)

seems particularly appropriate when a Motion for a More Definite Statement is made, because logically other Rule 12 motions can not be raised until the movant knows what the claims against him are. See, Moore, supra, pp. 2308, f. n. 5. Therefore, despite the strong. policy interests served by adherence to Rule 12 (g)'s waiver provisions, this Court has concluded that the defendant's motion to strike must be denied.

 There is strong precedent against permitting a 12(e) Motion to be used only for the purpose of laying the groundwork for a Motion to Dismiss. See, Harrington v. Yellin, 158 F.Supp. 456, 459 (E.D.Pa., 1942); Leon v. Hotel and Club Employees Union Local 6, 26 F.R.D. 158, 159 (D.C.S.D.N.Y., 1960). Automatic permission of the practice of making Rule 12(e) motions with the sole intent of "saving" other Rule 12 motions would effectively destroy the salutary purposes of Rule 12(g). On the other hand, it is clear that in certain cases it is appropriate to permit a 12(e) motion to have this effect. See generally, Cahn v. International Ladies' Garment Union, 203 F.Supp. 191 (D.C.E.D.Pa., 1962); Moore, supra ¶ 12.18, pp. 2307–2308. No standard has been enunciated for differentiating between Rule 12(e) motions which should, and Rule 12(e) motions which should not, be allowed to preserve a movant's rights to raise later Rule 12 motions. At the least, however, a motion permitted to serve this function would have to have been one made in good faith. The arguments of both counsel describing the complexities of this litigation has convinced the Court that the plaintiffs' Motion for a More Definite Statement was one which was made in good faith.

██ Two other considerations support the denial of the defendant's motion to strike. The first is that the plaintiffs' motion constitutes either a 12(b) (1) motion directed to " * * * lack of jurisdiction over the subject matter", or a 12(b) (6) motion alleging " * * * failure to state a claim upon which re-

lief can be granted." See, Hollywood Associates, Inc. v. Morris, 13 F.R.D. 141 (D.C.S.D.N.Y. 1952); contra, Lear Siegler, Inc. v. Adkins, 330 F.2d 595, 599 (C.A.9, 1964). Thus, pursuant to the provisions of 12(h) (3) and 12(h) (2), respectively, plaintiffs' motion is preserved from the waiver mechanism of 12(g). See, Advisory Committee's Note, Proposed Amendments to Federal Rules, 34 F.R.D. 325, 373–376 (1964); McGonigle v. Baxter, 27 F.R.D. 504 (U.S. D.C., E.D.Pa., 1961). Secondly, this Court is reluctant to dispose of a significant issue on the basis of a technical procedural delinquency. This is particularly the case when the plaintiffs' tardiness has caused the defendant no prejudice, and when the merits of the plaintiffs' motion have been fully argued.

The substance of the plaintiffs' motion to dismiss is that this Court has no jurisdiction to adjudicate that part of defendant's answer which relates to the '330 patent because there is no justiciable controversy involving that patent. The defendant argues that there is jurisdiction under the Declaratory Judgment Act, Title 28 U.S.C.A. § 2201.

 The Declaratory Judgment Act is intended to liberalize conceptions of justiciability so that narrow jurisdictional concepts do not preclude the adjudication of real disputes. Courts repeatedly have acknowledged the Act's remedial character by giving it a liberal interpretation. See, Treemond Co. v. Schering Corporation, 122 F.2d 702, 703 (C.A.3,1941); Dewey & Almy Chemical Co. v. American Anode, Inc., 137 F.2d 68, 69 (C.A.3, 1943); Borchard, Declaratory Judgments, 1st Ed., 1934, p. viii. The remedial nature of the Act is particularly marked in the patent area where the Act extended what had been the previously severely limited remedies afforded a party accused of patent infringement. See E. G. Dewey & Almy, supra, 137 F.2d at p. 69, Dr. Beck and Co. G. M. B. H. v. General Electric Co., 317 F.2d 538 (C.A.2, 1963); Moore, Federal Practice, Vol. 6(a), § 57.20, pp. 3115, 3118.

Although the Declaratory Judgment Act is given a liberal interpretation, actions based upon it, like actions based upon all other federal jurisdictional statutes, must conform to the Constitutional requirement that judicial power be extended only to "cases or controversies". U. S. Constitution, Article III, § 2. The Act itself establishes jurisdiction only in " * * * case(s) of actual controversy * * * ". It is difficult to establish a standarized test for determining whether or not there exists in any one case an "actual controversy" within the meaning of the Declaratory Judgment Act. The question is one which ultimately must turn upon the facts of each individual case. See, Simmonds Aerocessories v. Elastic Stop Nut Corporation of America, 257 F.2d 485, 489 (C.A.3, 1958). The question, however, generally involves three basic considerations:

" * * * (1) the type of activity by the patent owner which can be construed as threatening the declaratory plaintiff or his customers with an infringement suit, (2) the position of the (declaratory) plaintiff at the time of such a threat, and (3) the party making the threat, and whether his action can be imputed to the patentowner." Note, "Justiciable Controversy Under the Federal Declaratory Judgment Act and the Exercise of Patent Rights", 22 George Washington Law Review 63, 65 (1953).

Since the parties made no contentions regarding the first two considerations this Court has concluded that the only relevant consideration here is whether there was the requisite threatening activity. Relevant precedent establishes that the activity in this case was of a nature threatening enough to make defendant's claim regarding the '330 patent justiciable.

Two early cases dealing with the issue are *Treemond*, supra, 1941, and *Dewey*, supra, 1943. Both of these cases are factually distinguishable from the present, i. e. *Treemond* involved public advertisements by the defendant asserting his exclusive rights to the patents at issue, and *Dewey* involved defendant's commencement of infringement suits against parties similarly situated to the declaratory plaintiff. Both cases held that there was justiciability of the declaratory claim, however, and their reasoning is applicable here:

"The claim need not be formally asserted; nor should it be necessary that notice be given directly to the plaintiff. * * * ", *Treemond*, supra, 122 F.2d at p. 705.

and,

"Certainly the fact that Anode had never made any direct threat to sue Dewey & Almy is not conclusive of the problem. * * * " *Dewey*, supra, 137 F.2d at p. 70.

Subsequently the Third Circuit Court has described the necessary activity in terms of " * * * some *manifest threat* to the interests or * * * activities of the petitioner * * * .", See Sanford v. Kepner, 195 F.2d 387, 390 (C.A.3, 1952). In *Simmonds,* supra, 257 F.2d at 490, the Court indicated what factual circumstances would satisfy this "manifest threat" standard:

" * * * (I)t is sufficient if such a threat is implicit in the attitude of the defendant as expressed in circumspect language contained in a letter * * * *or if the plaintiff has notice that the defendant asserts that there is or will be infringement.*" (Emphasis supplied)

The most recent refinement of this standard was noted by Judge Kirkpatrick of this District in Westinghouse Electric Corp. v. Aqua-Chem, Inc., 278 F.Supp. 975 (E.D.Pa., Opinion filed August 25, 1967). Although the evidence established a presently existing controversy as to only two of the three patents involved in that suit Judge Kirkpatrick denied the motion to dismiss as to all three by using this language:

" * * * the evidence before the Court, far from showing the absence of a controversy, makes it *reasonably*

*certain* that in the *foreseeable future,* the activities of Westinghouse will enter into conflict with the rights which Aqua-Chem asserts under its patents." *Westinghouse,* supra, p. 5 (Emphasis supplied)

Plaintiffs argue that there is not a "manifest threat" here because, with the exception of its inclusion in a single package licensing agreement on June 16, 1967, patent '330 has remained dormant since the time of issuance. See, Transcript, p. 16. Language used in this case by the plaintiffs in various of their motions and supporting memoranda, however, clearly satisfies the standard as delineated in *Simmonds,* supra.

In their Motion for a More Definite Statement the plaintiffs stated:

"* * * if defendant is in fact infringing the claims of this patent (the '330 patent), the patent may be properly a part of the counterclaim and plaintiffs would plead accordingly." Document No. 7 in the File, ¶ 2, p. 1.

Plaintiffs made similar allegations in the Memorandum supporting that Motion. See, Document 8 in the File, p. 1. Defendant later admitted use of the methods covered by the patent by his response to plaintiffs' Interrogatory No. 6. See, Documents No. 6 and 13. Plaintiffs subsequently referred twice to defendant's response. They noted first that:

"* * * Defendant has answered these interrogatories, virtually admitting infringement of the patent * * *", See, Document No. 18 in the File, ¶ 2.

Later in the same memorandum the plaintiffs state:

"If defendant's contention as to prior use is borne out by the documents, plaintiffs would take appropriate action to remove all controversy concerning the '330 patent from this litigation." p. 3.

The totality of statements made by the plaintiffs reflects a substantial enough threat of infringement to establish the justiciability of defendant's claims regarding patent '330. Even if it were concluded, however, that the facts in this case do not satisfy the "manifest threat" standard, other considerations support denial of the plaintiffs' motion to dismiss.

Unlike the great majority of cases in this area the declaratory plaintiff here is the defendant, and not the plaintiff, in the principal case. This distinction does not negate the necessity of establishing the justiciability of the claim. See generally, Universal Time Punch, Inc. v. Consolidated Datametrics Corp. and SCM Corp., 264 F.Supp. 924 (S.D.N.Y.1967). It does, however, undercut the rationale supporting the manifest threat requirement. This requirement is intended to protect a patentee from harassment and from being required to litigate the validity of his patent at the whim of any party who is considering infringing it. See generally, *Sanford,* supra, 195 F.2d at p. 390; Borchard, supra, p. 807. Here the patentee initiated the litigation, and, thus, adjudication of claims regarding a patent bearing a close relationship to those which constitute the subject-matter of his own claim hardly constitutes undue harassment.

An opinion reflecting the more liberal tests of justiciability which should be applied in a situation such as the present, where declaratory relief is sought by the defendant rather than the plaintiff, is Kramer v. Living Aluminum, Inc., 38 F.R.D. 347 (D.C.S.D.N.Y., 1965). There the plaintiff sued for infringement of three patents and defendant, in his counterclaim, asked for a declaratory judgment that a fourth patent also owned by the plaintiffs was invalid and not infringed. The Court held that there was a justiciable controversy as to the fourth patent because:

"* * * it appears that Patent No. 2,978,775 is *sufficiently related* to the patents on which the complaint is

based that if an actual controversy exists as to those patents it also exists as to No. 3,978,775." *Kramer,* supra, 38 F.R.D. at p. 349.

In *Westinghouse Electric,* supra, the Court also turned justiciability upon the *closeness of the relationship* between the patents at suit.

 Neither *Kramer,* supra, nor *Westinghouse,* supra, delineates how close the relationship between patents should be to establish justiciability. It is clear here that infringement of the four principal patents will not necessarily establish infringement of patent '330. See generally, Printing Plate Supply Co. v. Crescent Engraving Co., 246 F.Supp. 654 (D.C.W.D.Mich., 1965). The relationship between the patents here is sufficiently close, however, in view of the facts that patent '330 is an improvement upon patents involved in the initial suit, and is integrally related to the practical use of those patents.

Finally, plaintiffs concede that if their motion to dismiss is granted they could initiate a new suit based upon patent '330 after the conclusion of this case. See, Transcript, p. 19. By exercising jurisdiction over defendant's claim, pursuant to the Declaratory Judgment Act, this Court is therefore serving the policy interest of expediting litigation which is the principal object of the Federal Rules:

> "These rules * * * shall be construed to secure the just, speedy, and inexpensive determination of every action." See, Rule 1.

See also, Federal Telephone & Radio Corp. v. Associated Telephone and Telegraph Co., 169 F.2d 1012 (C.A.3, 1948).

For all of the reasons noted above the plaintiffs' motion to dismiss that portion of the defendant's counterclaim which relates to patent '330 is denied. Accordingly, defendant's claims regarding the '330 patent will be litigated along with the principal claims alleged by the plaintiffs.