[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION TO STRIKE (No. 115)
The question presented is whether the complaint in this case, brought by an insurance company seeking a declaratory judgment as to whether it is obliged to defend its insured in a separate pending action, contains sufficient allegations to survive a motion to strike. Although the question is not an easy one, I have concluded that the motion to strike must be denied.
Because this case comes before me in the posture of a motion to strike, the allegations in the complaint must be taken as true. In addition to the complaint in this case, the file contains a copy of the amended complaint in the separate pending action to which the complaint in this case refers. Because it is well established that the Superior Court may take judicial notice of other Superior Court files, I will feel free to refer to this separate pleading. It should be noted at the outset, however, that the insurance contract to which the complaint in this case also refers, is not contained in the file (although snippets of the contract are quoted in the complaint), and I consequently have no basis for construing that contract. In any event, the merits of the parties' substantive dispute are not now before me. The question is, rather, whether the court should be allowed to proceed to the merits at all.
The relevant facts can be briefly summarized. The plaintiff, United Services Automobile Association ("United CT Page 11819 Services"), has an insurance contract with the named defendant, Bonita L.C. Marburg ("Marburg"). Marburg has been served with a complaint in the case of Fabrizio v. Marburg, No. 307877 (Conn.Super.Ct. Fairfield J.D.). The Fabrizio case is presently pending and awaiting trial. United Services has chosen to defend Marburg in the Fabrizio action pursuant to a reservation of its rights to contest coverage.
The amended complaint in Fabrizio consists of eight counts. The first seven counts are directed against Marburg. (The eighth count is directed against an additional defendant named John Marburg on a fraudulent transfer theory.) The underlying factual allegation in each of the first seven counts is that Marburg was a teacher in the Stratford School System in 1991. The school system referred Marburg to Margaret Fabrizio to tutor Fabrizio's minor son. According to the complaint, Marburg "initiated and engaged in sexual acts" with the minor in question on numerous occasions, causing him psychiatric illness and burdening Fabrizio with medical expenses. Both Fabrizio and her son are named as plaintiffs. The first and second counts, brought by mother and son respectively, allege the "sexual acts." The third and fourth counts, also brought by mother and son respectively, allege negligence. The theory of those counts is that Marburg "[k]new that she was sexually attracted to minor boys" and failed to seek help. The fifth and sixth counts, again brought by mother and son respectively, allege negligent infliction of emotional distress. The seventh count alleges that "[t]he perpetration of such intentional and violent acts . . . are [sic] so egregious and so unconscionable . . . as to merit the award of punitive damages" to the minor plaintiff.
The present declaratory judgment action was brought in 1994 by United Services against both Marburg and the Fabrizio
plaintiffs. The revised complaint alleges that the United Services insurance policy with Marburg excluded coverage for both "bodily injury which is expected or intended by the insured" and "bodily injury arising out of or in connection with a business engaged in by an insured." The complaint further alleges that "there is no other form of procedure or action by which either party may seek appropriate relief and resolution of the disputed insurance coverage issues and no other procedure whereby [United Services] can, with impunity, be relieved of the on-going expense and cost of continuing to defend Marburg pursuant to its reservation of rights." The complaint then prays for the following relief: CT Page 11820
 A declaratory judgment that the contract of insurance between [United Services and Marburg] does not cover the claims made by the Fabrizios for one or more of the following reasons:
 1. The damages alleged do not consist of "bodily injury."
 2. The damages alleged arise out of injurious consequences expected or intended by the insured.
 3. The damages alleged arise out of activities undertaken in connection with a business engaged in by the insured.
Marburg has now filed a motion to strike the entire revised complaint. This motion contends that United Service's declaratory judgment action is (1) premature and (2) not the proper method for adjudication of the claimed controversy. Alternatively, Marburg moves to strike the prayer for relief for the same reasons. These contentions must now be considered.
The centerpiece of Marburg's argument is Hartford Accident Indemnity Co. v. Williamson, 153 Conn. 345, 216 A.2d 635 (1966).Williamson was a declaratory judgment action brought by an insurance company attempting to establish that its motor vehicle liability policy did not apply to the defendant in a pending personal injury action. The defendant in Williamson was not himself a party to the insurance contract. The policy in question covered a person using a motor vehicle with the insured's permission but excluded certain employees. The insurance company sought a declaration as to the coverage of the defendant. The trial court sustained a demurrer to the complaint and, on appeal, the Supreme Court affirmed. The Court reasoned that the statute now codified as Conn. Gen. Stat. § 38a-321
"furnishes a plain and simple method for the determination of the liability of the plaintiff to respond to a judgment obtained [in the pending action]." 153 Conn. at 349. Section 38a-321
provides that upon the recovery of a final judgment against an insured person, if the judgment is not satisfied within thirty days, the judgment creditor "shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment." In Williamson, the Court explained, "[n]o facts are alleged in the complaint to CT Page 11821 demonstrate a reason for the determination of [the coverage] question in a declaratory judgment action rather than under [§ 38a-321]." 153 Conn. at 350. Consequently, the insurance company had no alternative but "to seek redress in a defense to an action under the statute, should the occasion for that arise."Id.
United Services points out that Williamson can be distinguished from this case on a simple point of pleading. TheWilliamson complaint alleged no facts demonstrating a reason to determine the coverage question in a declaratory judgment action rather than a § 38a-321 action. 153 Conn. at 350. The complaint here, in contrast, alleges such facts. Specifically, paragraph 10 of the present complaint, as mentioned, alleges that there is no other procedure whereby United Services can "be relieved of the on-going expense and cost of continuing to defend Marburg pursuant to its reservation of rights." The Williamson
complaint, reprinted in A-450 Conn. Supreme Ct. Records Briefs
at 213-14 (December Term 1965), contains no analogous allegation.
The allegation just mentioned is entirely plausible. A successful defense of a § 38a-321 action would not make United Services whole, for its defense costs in the Fabrizio case would not be reimbursed. Those costs may well be substantial. The allegation that United Services has no alternative to a declaratory judgment action to relieve itself of such costs effectively distinguishes this case from Williamson. For this reason, Williamson cannot be considered controlling.
The conclusion that Williamson is not controlling does not, however, necessarily mean that Marburg's motion to strike must be denied. As she rightly points out, even in the absence of controlling precedent, there are serious policy reasons that militate in favor of granting her motion. A respected treatise has summarized six reasons for disallowing declaratory judgment actions brought by insurance companies while underlying actions against their insured are still pending:
 1. The declaratory judgment action was not intended to be used to force the insured to have a "dress rehearsal" of an issue to be tried in the main case
 2. The holding in the declaratory judgment action might inappropriately collaterally estop the parties to the main action as to certain factual issues CT Page 11822
 3. Such a proceeding would unduly burden the insured and improperly allow the insurer to wrest control of the litigation from the injured party
 4. Such a declaratory judgment would violate the principle of judicial economy
 5. Such an action would constitute an unwarranted interference with another court's proceedings
 6. To the extent the declaratory judgment might resolve an issue adversely to the insured, it would be inherently unfair to force the insured to litigate against the insurance company; under those circumstances, rather than obtaining the benefit of the company's resources and expertise in defending against the plaintiff, those resources, for which the insured had bargained, would be turned against the insured and used to help establish his or her liability
Allan D. Windt, Insurance Claims and Disputes 326 (1982). (Footnotes omitted.)
While these considerations must be taken seriously, they are not of equal force in the context of this case. To take the most obvious example, reason (5) has no application to this case, because this action does not interfere with another court's proceedings. While a decision by this court that United Services has no duty to defend might prompt a motion to withdraw by defense counsel in the Fabrizio case, the decision as to whether to grant or deny that motion would have to be made by theFabrizio court. No relief sought in this court would, in and of itself, affirmatively interfere with the Fabrizio proceedings.
Reasons (1) and (2) are more forceful but do not necessarily preclude the maintenance of the present action. This action will not necessarily result in either a "dress rehearsal" or collateral estoppel. In the first place, this action contains a potentially dispositive issue not presented in Fabrizio. United Services contends that the damages alleged in Fabrizio "arise out of activities undertaken in connection with a business engaged in by the insured." That issue will not be litigated in Fabrizio.
In the second place, under established Connecticut law, it is the nature of the factual allegations contained in the Fabrizio
CT Page 11823 complaint, rather than the truth or falsity of those allegations, that determine the duty to defend. Missionaries of the Companyof Mary, Inc. v. Aetna Casualty Surety Co., 155 Conn. 104, 110,230 A.2d 21 (1967). It will be neither necessary nor appropriate to litigate the truth or falsity of the Fabrizio allegations in this case.
Reason (4) — that a declaratory judgment would violate the principle of judicial economy — is also unconvincing in the context of this case. This consideration makes some sense when "the same issues between the same parties are already framed and ready to be decided" in another court. Westchester FireInsurance Co. v. Larson, 199 F. Sup. 224, 226 (D.Minn. 1961). That is not, however, the case here. United Services is not a party in the Fabrizio case, and, as already discussed, there is at least one potentially dispositive issue in this case that will not be litigated in Fabrizio.
Reasons (3) and (6) are more forceful. Both reasons are grounded in the concern that the insured, in purchasing an insurance contract, is bargaining for the resources and litigating expertise of the company. There is, a number of courts have reasoned, considerable unfairness when "the very resources for which he bargained [are] turned against him and used to establish his liability whenever intentional tort [is] alleged." Allstate Insurance Co. v. Harris, 445 F. Sup. 847, 851
(N.D.Cal. 1978). While the force of this rhetoric must be acknowledged, a number of complexities lie beneath the surface. These complexities must now be examined.
In the first place, the argument that the same resources for which the insured bargained are being turned against him contains a logical fallacy. An insurance contract is a contract for specified services. The definition of those specified services is one of the subjects of the bargain. If I bargain for representation in lawsuit A, and I am, subsequently, sued in lawsuit B, there is nothing logically wrong with the insurance company using its resources to establish that lawsuit B is not lawsuit A. Lawsuit B was simply not part of the bargain. In lawsuits like the Fabrizio case, moreover, there is an important practical consideration as well. This consideration has been well stated by Judge Griffin of the Florida District Court of Appeal. It is appropriate to quote his analysis at length: CT Page 11824
 The plaintiff pleads negligence in a case like this because he wants a deep pocket from which to satisfy a judgment or, even better, to obtain a settlement. Normally when a defendant is sued on a theory that is inadequately pleaded, he gets the claim dismissed or, if the claim is invalid under controlling law, he gets a summary judgment. But in cases such as this the normal antidotes for invalid claims do not work. An insured defendant is often totally committed to the negligence pleading of the plaintiff because as long as the negligence claim is included in the complaint, the insured must be provided a defense on the intentional tort claim, a benefit he would not have if the spurious negligence claim were missing. It is also more likely the insurer will come up with the money to settle the entire case based on the cost of defending the negligence claim. In many of these cases, the defendant even has some relationship with the victim, or a sense of remorse, and thus has either an emotional or financial stake in having the plaintiff succeed in recovering a judgment under a theory covered by insurance. In a case where neither the plaintiff nor the defendant wants the covered claim disposed of, it is most unlikely to disappear.
 If the fictional covered claim is not disposed of, the insurer is faced with providing a defense of the entire action through trial, the cost of which is generally the impetus for paying sums to a plaintiff in settlement that would not be payable under the policy. Only the insurer is interested in quickly defeating the covered claims and the insurer has no forum to be heard.
 I appreciate the fact that the duty to defend is broader than the duty to indemnify and that the insurer independently covenants to defend claims against the insured that are false, fraudulent or groundless, but quick and successful resolution of the issues that give rise to coverage deprives the insured of nothing he is entitled to receive. If the "false, fraudulent or groundless" claim of negligence is expeditiously defeated, the defendant has received what he is entitled to (defense of a covered claim through its successful conclusion). CT Page 11825
Allstate Insurance Co. v. Conde, 595 So.2d 1005, 1009 (Fla. Dist. Ct. App. 1992) (Griffin, J., concurring). I cannot improve upon this language and respectfully adopt it.
It must be acknowledged that there is a counter argument to this argument. As the Maryland Court of Appeals has observed, "the insurer, in drafting the policy, could have included a provision limiting its duty to defend the insured when a conflict of interests arises and could have easily avoided the difficulty it now faces." Brohawn v. Transamerica Insurance Co.,347 A.2d 842, 851 (Md. 1975). But this counter argument, while true, does not fully address the question presented. A contract nevertheless exists, and it must still be interpreted. A declaratory judgment action like the one at hand provides the most logical and efficient means of interpreting it.
Other considerations should be mentioned as well. While the state courts are divided on the propriety of declaratory judgment actions like the present one, the federal courts have routinely decided such actions since the Supreme Court approved them inMaryland Casualty Co. v. Pacific Coal Oil Co., 312 U.S. 270
(1941). See, e.g., Nautilus Insurance Co. v. Winchester Homes,Inc., 15 F.3d 371, 375-76 (4th Cir. 1994), and authorities cited therein. This long practice demonstrates, if nothing else, that there is nothing innately remarkable about the type of relief sought here.
The substantive reasoning of the federal courts must also be considered. In recent years, at least, the federal courts have focused on the reality of settlement negotiations. The Third Circuit observed in a much-cited case that:
 [A] liability insurer's indemnification agreement carries with it not only an obligation to pay judgments against the insured but also, in the real world, to pay settlement amounts. Indeed liability insurers owe fiduciary obligations to their insureds with respect to the consideration of settlement offers and the conduct of settlement negotiations. . . . It would turn the reality of the claims adjustment process on its head to hinge justiciability of an insurance agreement on the maturation of a suit to a judgment when the overwhelming number of disputes are resolved by settlement. The respective interests and obligations CT Page 11826 of insured and insurers, when disputed, require determination much in advance of judgment since they will designate the bearer of ultimate liability in the underlying cases and hence the bearer of the onus and risks of settlement. So viewed, the controversy is quite proper for a judicial determination now. To delay for the sake of more concrete development would prevent the litigants from shaping a settlement strategy and thereby avoiding unnecessary costs. But declaratory judgment relief was intended to avoid precisely the "accrual of avoidable damages to one not certain of his rights." Dewy Almy Chemical Co. v. American Anode, Inc., 137 F.2d 68, 69 (3d Cir.), cert. denied, 320 U.S. 761 . . . (1943). . . . A determination of legal obligations would thus strongly affect present behavior, have present consequences and resolve a present dispute.
ACS, Inc. v. Aetna Casualty Surety Co., 666 F.2d 819, 823 (3d Cir. 1981). This logic has recently persuaded the Maryland Court of Appeals to modify the hostile position to such actions that it had taken in Brohawn, quoted above. See Chantel Associates v.Mt. Vernon Fire Insurance Co., 656 A.2d 779, 787-88 (Md. 1995).
Finally, the purpose of our declaratory judgment statute, Conn. Gen. Stat. § 52-29, must be considered. The statute "is as broad as it could well be made." Sigal v. Wise, 114 Conn. 297,301, 158 A. 891 (1932). "The purpose of a declaratory judgment action is to secure an adjudication of rights where there is a legal relations between the parties." Connecticut Association ofHealth Care Facilities, Inc. v. Worrell, 199 Conn. 609, 613,508 A.2d 743 (1986). This rationale undercuts Marburg's argument that the declaratory judgment action here is premature. As Professor Borchard of the Yale Law School observed long ago:
 This is to defeat one of the main purposes of the declaratory judgment, namely, to remove clouds from legal relations before they have become completed attacks or "disputes already ripened." If there is human probability that danger or jeopardy or prejudice impends from a certain quarter, a sufficient legal interest has been created to warrant a removal of the danger or threat.
Edwin Borchard, Declaratory Judgments 637 (2d ed. 1941). AccordCT Page 11827Reisen v. Aetna Life Casualty Co., 302 S.E.2d 529, 533 (Va. 1983).
"There are no easy answers in a case such as this."Montrose Chemical Corp. v. Superior Court, 31 Cal.Rptr.2d 38,42 (Cal.Ct.App. 1994). On balance, however, it is appropriate to allow the merits of the complaint to be considered.
The motion to strike is denied.