# United States Court of Appeals for the Federal Circuit

---

**ASIA VITAL COMPONENTS CO., LTD.,**
*Plaintiff-Appellant*

**v.**

**ASETEK DANMARK A/S,**
*Defendant-Appellee*

---

2015-1597

---

Appeal from the United States District Court for the Eastern District of Virginia in No. 1:14-cv-01293-LO-TCB, Judge Liam O'Grady.

---

Decided: September 8, 2016

---

ANDREW C. AITKEN, Aitken Law Offices, Wheaton, MD, and CAMERON H. TOUSI, IP Law Leaders PLLC, Washington, DC, argued for plaintiff-appellant. Also represented by RAYMOND HO.

ROBERT F. MCCAULEY, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Palo Alto, CA, argued for defendant-appellee. Also represented by C. BRANDON RASH, Washington, DC.

---

Before PROST, *Chief Judge*, LINN and TARANTO, *Circuit Judges.*

PROST, *Chief Judge*.

Asia Vital Components Co., Ltd. ("AVC") filed a declaratory judgment action against Asetek Danmark A/S ("Asetek") seeking a declaration that AVC did not infringe U.S. Patent Nos. 8,240,362 ("'362 patent") and 8,245,764 ("'764 patent") (collectively, "the asserted patents") and that those patents are invalid. The United States District Court for the Eastern District of Virginia dismissed the case for lack of subject matter jurisdiction, concluding that AVC's complaint did not plead sufficient facts to show that there is a substantial controversy between the parties. For the reasons stated below, we reverse the district court's ruling and remand for further proceedings.

## BACKGROUND

AVC is a Taiwanese corporation that manufactures cooling systems for integrated circuits. Asetek is the assignee of the '362 and '764 patents, which are generally directed toward liquid cooling systems that are used in connection with computers to cool integrated circuits.

Beginning in 2012, Asetek brought lawsuits against other competitors that make and sell liquid cooling systems, alleging infringement of the '362 and '764 patents. In April 2014, Asetek sent AVC a letter accusing AVC of infringing the '362 and '764 patents. That letter, however, was based on Asetek's mistaken belief that AVC manufactured a particular product, the Liqmax 120s. In the letter, Asetek specifically referenced the Liqmax 120s product and provided an exemplary infringement claim chart for that product.

In response, AVC told Asetek that it did not manufacture the Liqmax 120s. Nonetheless, AVC requested a meeting with Asetek "to discuss various related matters,"

which AVC considered "of importance concerning future cooperation" with Asetek.  J.A. 105.  Asetek responded in an email dated August 2, 2014, that if AVC was not making the Liqmax 120s then there did not appear to be a reason to meet.  Also in the email, Asetek referenced the fact that it had tried to cooperate with AVC previously "and the experience went very poorly and sowed distrust in Asetek for AVC."  J.A. 207.  Asetek further noted that it does not license its patents and said that "although that option may have previously been available to AVC when it was manufacturing Asetek's products, that option is no longer available to AVC (based in large part on AVC's prior behavior toward Asetek)."  *Id.*  Finally, Asetek stated,

> Please be advised that Asetek believes that AVC is likely selling other infringing products in the United States.  We are sure you are aware that Asetek enforced its IP, as it has in pending litigations against CoolIT and Cooler Master.  Asetek has also been allowed a patent in the European Union with claims similar to the US '362 and '764 patents, with priority in 2003, and also has similar claims pending in China.

*Id.*

A meeting did ultimately take place between AVC and Asetek in August 2014.  At the meeting, AVC expressed a desire to license the asserted patents, and Asetek initially declined.  After further discussion, Asetek did offer AVC a license at a royalty rate of 16% or at a reduced rate if AVC would provide preferential pricing on components.  AVC representatives at the meeting said they would consider that possibility and bring it to the attention of AVC management.  There was no specific discussion of AVC products potentially infringing the asserted patents at the meeting.

On September 30, 2014, AVC filed a complaint against Asetek alleging that AVC had designed and built liquid cooling products, identified as the K7 and K9 products, and seeking a declaration that its products did not infringe the '362 and '764 patents and that those patents are invalid. AVC contends that it had completed prototype products of the K7 and K9 products and that those products have a number of similarities to the CoolIT and Cooler Master products that Asetek did accuse of infringement. Asetek responds that it never accused the K7 or K9 products of infringement, and, in fact, contends it did not even know that those products existed before AVC's complaint.

The district court agreed with Asetek and dismissed the complaint for lack of subject matter jurisdiction. The district court held that the "complaint does not plead sufficient facts to show that there is a substantial controversy under the totality of the circumstances." J.A. 2. The district court did not explain its reasons in the written decision, but instead referred to the reasons stated during a hearing the court held on the question of jurisdiction. At the hearing, the district court emphasized that there was never any discussion between the parties as to whether AVC's products were infringing and credited Asetek's declarations that it was unaware of the existence of those products. AVC timely appealed to us. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review a district court's dismissal for lack of subject matter jurisdiction de novo. *Powertech Tech. Inc. v. Tessera, Inc.*, 660 F.3d 1301, 1306 (Fed. Cir. 2011). We review factual findings underlying the jurisdiction determination for clear error. *See SanDisk Corp. v. STMicroelecs., Inc.*, 480 F.3d 1372, 1377 (Fed. Cir. 2007). The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at

the time the claim for declaratory relief was filed. *Powertech Tech.*, 660 F.3d at 1306.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). In *MedImmune, Inc. v. Genentech, Inc.*, the Supreme Court stated that the test for whether an "actual controversy" exists is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 549 U.S. 118, 127 (2007) (internal quotation marks omitted).[1]

Although it relaxed the test for establishing jurisdiction, *MedImmune* "did not change the bedrock rule that a case or controversy must be based on a *real* and *immediate* injury or threat of future injury that is *caused by the defendants*—an objective standard that cannot be met by a purely subjective or speculative fear of future harm." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339

---

[1]   In so doing, the Supreme Court in *MedImmune* disagreed with the stricter "reasonable apprehension of imminent suit" test that our court had previously applied and thus lowered the bar to establish jurisdiction. *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1339 (Fed. Cir. 2007). Nonetheless, the reasonable apprehension test is still a factor and "one of many ways a patentee can satisfy the Supreme Court's more general all-the-circumstances test to establish that an action presents a justiciable Article III controversy." *Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*, 527 F.3d 1278, 1291 (Fed. Cir. 2008).

(Fed. Cir. 2008). Thus, we have explained post-*MedImmune* that "jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee." *SanDisk*, 480 F.3d at 1381. Instead, we have required "conduct that can be reasonably inferred as demonstrating intent to enforce a patent." *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1363 (Fed. Cir. 2009).

Here, AVC alleges that, under the totality of circumstances, a substantial controversy of sufficient immediacy and reality exists between it and Asetek to warrant jurisdiction. It contends that the district court improperly focused on Asetek's contention that it did not specifically accuse AVC's K7 and K9 products of infringement in finding no jurisdiction. Asetek responds that, at most, AVC's allegations amount to "a purely subjective apprehension of a future infringement suit involving the K7 and K9 prototypes" and thus are insufficient to satisfy the actual controversy test. Appellee's Br. 11.

We agree with AVC that the totality of circumstances indicates that an actual controversy existed between the parties at the time of the declaratory judgment complaint. Although the April 30, 2014 letter incorrectly accused AVC of manufacturing the Liqmax 120s, it was still a demand letter that referenced a product that AVC contends is similar to its own K7 and K9 products. Upon receiving the letter, AVC contacted Asetek, saying that it did not manufacture the Liqmax 120s, and then, in a follow-up email, AVC requested a meeting with Asetek "to discuss the related matter." J.A. 105. Instead of simply responding that it had made a mistake with respect to the Liqmax 120s, Asetek's August 2, 2014 email contained a number of statements that indicate that an actual controversy between the parties existed. For example, Asetek (1) rehashed the volatile relationship between the parties,

saying that poor experiences with AVC in the past have "sown distrust in Asetek for AVC"; (2) stated that it "does not license its patents" generally and, more specifically, that it would not license them to AVC due to the previous conflicts between the parties; (3) accused AVC of "likely selling other infringing products in the United States"; (4) warned AVC that it "enforced its IP" and noted its "pending litigations against CoolIT and Cooler Master"— companies that AVC alleges sell products similar to the K7 and K9; and (5) emphasized that it has been allowed a patent in the European Union with claims similar to the asserted patents and also has similar claims pending in China. J.A. 207. Such a response by Asetek clearly "demonstrate[s] intent to enforce a patent," *Hewlett-Packard*, 587 F.3d at 1363, and is thus sufficient to conclude that a substantial controversy between the parties existed at the time of the complaint.

The further interactions between the parties only confirm our conclusion. Despite recognizing that AVC does not manufacture the Liqmax 120s, Asetek still agreed to a meeting with AVC where they discussed potential licensing of the asserted patents. Moreover, AVC alleges that Asetek made threats to its customers regarding AVC's infringement of the asserted patents. Specifically, AVC alleges that "AVC's customers for the K7 and K9 products have expressed concern that [they will be subject] to liability under the Asserted Patents and AVC has withheld accepting purchase order out of fear of possible liability based upon the Asserted Patents." J.A. 67. To support its allegation, AVC submitted a declaration from its Chief Corporation Officer, David Wang, stating:

> From discussions with representatives of two AVC customers, these representatives informed AVC that Asetek has expressed to them that AVC has infringed Asetek's U.S. Patents, and that if these customers use AVC's products, then lawsuit will follow. These customers are: Thermaltake (a

Taiwanese company) and IBuyPower (a U.S. company).

J.A. 213.[2] Such threats constitute affirmative actions by Asetek to impede and frustrate AVC's attempts to meaningfully participate in the liquid cooling market and further support our conclusion that a substantial controversy existed between the parties.

Asetek relies heavily on the fact that it never referenced AVC's particular products or product line as potentially infringing, and, in fact, did not even know of AVC's products at the time of the complaint. But we have not required such specific facts to find jurisdiction. *See ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1348 (Fed. Cir. 2011) ("[A] specific threat of infringement litigation by the patentee is not required to establish jurisdiction."). Indeed, in *Arrowhead Industrial Water, Inc. v. Ecolochem,*

---

[2]    Asetek contends that we should not look beyond the allegation in the complaint and thus should not consider the declaration. But we have said that "[i]n establishing the predicate jurisdictional facts, a court . . . may review evidence extrinsic to the pleadings, including affidavits and deposition testimony." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993). Asetek also denies making any such threat to AVC's customers and thus says that the disputed allegation is "subject to fact-finding by the district court." *Id.* Here, both the Wang declaration from AVC and Asetek's declaration denying the allegation were before the district court and, although it did not make any explicit fact findings, the district court appears to have assumed that the allegation was true. We have no reason to conclude otherwise. Moreover, even if we were to discount the allegation, the August 2, 2014 email itself is sufficient to demonstrate that an actual controversy existed between the parties at the time of the complaint.

*Inc.*, applying the stricter reasonable apprehension test, we stated that "a court may find a clear basis for a reasonable apprehension in all the circumstances, even when a patentee first learns of plaintiff's conduct upon receipt of the complaint." 846 F.2d 731, 738 (Fed. Cir. 1988). The question of jurisdiction does not turn on Asetek's knowledge of the specific AVC products or whether Asetek specifically alleged that the K7 and K9 products infringed the asserted patents; instead, the question is whether, under all the circumstances, Asetek's actions "can be reasonably inferred as demonstrating intent to enforce a patent." *Hewlett-Packard*, 587 F.3d at 1363. We conclude that Asetek's conduct demonstrates just that.

In addition to an affirmative act by Asetek, AVC must also show that the threat of suit is real and immediate to establish jurisdiction. *MedImmune*, 549 U.S. at 127. "[A]lthough a party need not have engaged in the actual manufacture or sale of a potentially infringing product to obtain a declaratory judgment of non-infringement, there must be a showing of 'meaningful preparation' for making or using that product." *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 881 (Fed. Cir. 2008). Here, AVC has made the requisite showing. AVC alleged that (1) it has completed designs of the K7 and K9 products; (2) it has manufactured sample prototype products of the K7 and K9 (as confirmed by photographs of the products presented to the district court below); (3) it intends to market and sell the products in the United States; and (4) its K7 and K9 products "are positioned to directly compete in the market against Cooler Master, Coolit Systems and Enermax as well as the Asetek's products." J.A. 67. AVC's allegation regarding the concerns of its customers and that it has "withheld accepting purchase order[s]" indicates that AVC has customers lined up for its products that have submitted, or, at the very least, are prepared to submit purchase orders for the products. *Id.*

Asetek does not dispute these allegations but instead contends that they do not demonstrate "concrete plans" to engage in potentially infringing activities. We disagree. This is not the type of case where, at the time the complaint was filed, the accused products were far from being complete or operational and were susceptible to design changes, making it impossible to compare them against the asserted patents. *See, e.g.*, *Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1380 (Fed. Cir. 2004) (finding no real or immediate controversy where the alleged infringer testified that it had no intent to market the accused product and "the design [of the accused product] was fluid on the date the complaint was filed" making it "impossible to determine—on that date—whether any eventual design of the [accused product] would infringe [the asserted] patents"); *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1216 (7th Cir. 1980) (finding no real and immediate controversy where, as of the date of the complaint, the alleged infringer "anticipated further, fairly extensive testing of the [accused product] including construction of more test models, and anticipated design changes where necessary in response to the testing"). This is also not a case like *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), or *Matthews International Corp. v. Biosafe Engineering, LLC*, 695 F.3d 1322 (Fed. Cir 2012), in which an intent to take action was unaccompanied by any specific plans or steps that might satisfy the *MedImmune* "immediacy" requirement. *MedImmune*, 549 U.S. at 127. Instead, AVC provided undisputed allegations that it has manufactured prototypes, has potential customers, and has a sufficiently immediate interest to request a license to clear the path for its intended entrance into the U.S. market. That is sufficient to meet the real and immediate test.

We similarly disagree with Asetek that AVC's allegations provide insufficient information about whether the K7 and K9 products would infringe the asserted patents.

AVC specifically stated that its products "may have a number of structural similarities to the accused products sold by Coolit Systems, Inc. and Cooler Master Co., Ltd."—products which Asetek has alleged infringe the asserted patents—and that its products "are positioned to directly compete in the market" against those of Cooler Master, Coolit Systems, Enermax, and even Asetek. J.A. 67. Moreover, AVC provided photographs depicting the similarities between the K9 product and the Liqmax 120s—the product that Asetek initially accused of infringement in its demand letter to AVC. AVC was not required, as Asetek contends, to specifically allege that the structural similarities between its products and the competitor products are relevant to the claims of the asserted patents; such an allegation is implicit in the complaint when read as a whole. Indeed, to require more from AVC would precipitate the anomalous result whereby a party seeking a declaration of noninfringement must show that its product is the same as the patented product in relevant respects. As is clear from our case law—and from common sense—that is not the test for jurisdiction. *See Arrowhead*, 846 F.2d at 738 ("It is at best incongruous to require that one seeking a declaration of *noninfringement* prove its process or product is the 'same as' or 'identical' to the patented process or product.").

Thus, we conclude that AVC alleged sufficient facts that, "under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune,* 549 U.S. at 127.

CONCLUSION

For the foregoing reasons, we reverse the ruling of the district court and remand for further proceedings.

**REVERSED AND REMANDED**