**MEDICAL COMPONENTS, INC. and Martech Medical Products, Inc.**
**Plaintiffs/Counter-defendants**

v.

**OSIRIS MEDICAL, INC., and Raul Garcia, Jr., Defendants/Counter-claimants.**

**EP–15–CV–305–PRM**

United States District Court, W.D. Texas, El Paso Division.

Signed 12/29/2016

Alfred W. Zaher, Pro Hac Vice, David Schumacher, Pro Hac Vice, Shawn Li, Pro Hac Vice, Maryellen Madden, Pro Hac Vice, Buchanan Ingersoll & Roony P.C., Philadelphia, PA, James G. Warriner, Gilbert Andrew Greene, Norton Rose Fulbright US LLP, Austin, TX, Ken K. Slavin, Kemp Smith, P.C., El Paso, TX, for Plaintiff.

Clyde A. Pine, Jr., Mounce, Green, Myers, Safi, Paxson & Galatzan, P.C., El Paso, TX, Joseph P. Grimes, Joseph P. Grimes, Esquire, LLC, Haddonfield, NJ, for Defendant

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

PHILIP R. MARTINEZ UNITED STATES DISTRICT JUDGE

On this day, the Court considered Defendants Osiris Medical, Inc. ("Osiris") and Raul Garcia, Jr.'s "Corrected Motion for Summary Judgment... Dismissing Plaintiffs' Second Amended Complaint with Prejudice for Lack of Subject Matter Jurisdiction under Article III of the U.S. Constitution" (ECF No. 116) [hereinafter "Motion"], filed on August 31, 2016; Plaintiffs Medical Components, Inc. ("Medcomp") and Martech Medical Products, Inc.'s ("Martech") "Opposition to Defendants' Corrected Motion for Summary Judgment" (ECF No. 119) [hereinafter "Response"], filed on September 14, 2016; and Defendants' "Reply to Plaintiffs' Opposition to Defendant' Motion for Summary Judgment (Corrected)" (ECF No. 125) [hereinafter "Reply"], filed on September 21, 2016, in the above-captioned cause.

Defendants contend that the Court lacks jurisdiction to preside over Plaintiffs' declaratory judgment action because of justiciability concerns. Mot. 4. For the reasons discussed below, the Court will grant Defendants' Motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a dispute concerning a patent license agreement ("PLA") involving Defendant Garcia's patented Huber needle—United States Patent No. 7125,398 ("the '398 Patent Needle"). Second Am. Compl. for Declaratory J. of Non–Infringement of U.S. Patent No. 7125,398 1, July 22, 2016, ECF No. 95 [hereinafter "Second Amended Complaint"].[1] Defendant Osiris granted Plaintiff Medcomp license to use the intellectual property rights to manufacture and sell the '398 Patent Needle. Second Am. Compl. 3.

After the PLA expired, Defendant Osiris sent Plaintiff Medcomp a letter dated July 8, 2015 ("July 2015 Letter"). See Second Am. Compl. Ex. C, at 1. In the July 2015 Letter, Defendant Osiris requested compensation for "any new product development" and information regarding Plaintiff

---

1. Plaintiffs filed their first complaint in mid-October 2015. See Compl. for Declaratory J. of Non–Infringement of U.S. Patent No. 7125,398, Oct. 19, 2015, ECF No. 1 [hereinafter "Original Complaint"].

Medcomp's "efforts to obtain FDA 510k approval [sic] this product and any new products derived from the efforts of [Defendant] Garcia, in whole or in part." *Id.* (emphasis added). Shortly thereafter, Plaintiffs allege that Defendant Garcia accused Plaintiff Medcomp of "infringing the '398 patent" on two different occasions. *See* Second Am. Compl. 6.

Plaintiff Medcomp has created three different Huber needles—V2, V3, and V4. *See* Technical Tutorial Hr'g Tr. 32, June 10, 2016, ECF No. 81 (indicating V2, V3, and V4 are simply Plaintiffs' internal nomenclature). Two of Plaintiffs' Huber needles—V3 and V4—were developed after filing the Original Complaint. *See* Mot. Ex. 7–8. Plaintiff Medcomp's Director of Engineering testified that Plaintiffs conceived V3 and V4 during the first quarter of 2016. *See id.* Plaintiff Medcomp has invested over $1 million in "designing, developing, preparing to manufacture, and protecting the intellectual property of these [V2, V3, and V4] products." *See* Resp. 8 (citing Decl. of Timothy M. Schweikert, May 5, 2016, ECF No. 73–2). Additionally, Plaintiffs are ready to make a "couple hundred thousand" V4 units. Resp. Ex. A.

On October 19, 2015, Plaintiffs Medcomp and Martech subsequently initiated the instant declaratory action seeking the Court's declaration that they did not infringe upon the '398 Patent Needle. Original Compl. 1.

 Thereafter, Plaintiffs have ceased pursuing V2 and V3, and instead have focused their efforts in bringing V4 to market in three different ways. *See* Mot. Exs. 2, 4 (Dep. of Pl. Medcomp's Project Management Director); *see also* Technical Tutorial Hr'g Tr. 33 ("[Plaintiff Medcomp] is going to launch the V4 ... but [Plaintiff Medcomp] would like declaratory judgment on V2, V3, and V4."). First, on March 18, 2016, Plaintiff Medcomp filed a provisional patent application with the U.S. Patent and Trademark Office ("PTO") for V4. Notice 132–208, May 13, 2016, ECF No. 75–1. Second, on July 28, 2016, Plaintiff Medcomp filed for trademark registration of the name "Pro–Lock" for V4. Mot. Ex. 10. Finally, on August 19, 2016, Plaintiff Medcomp received FDA acknowledgment of the filing of a 510(k) application for V4. Mot. Ex. 9.[2]

---

**2.** The Medical Device Amendments ("MDA"), 21 U.S.C. § 360c *et seq.*, established a federal regulatory regime for medical devices. Of the three classes, Class III devices have the most stringent level of federal oversight. *See Buckman Co. v. Pls.' Legal Comm.*, 531 U.S. 341, 344, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001) (identifying Class III devices as "incur [ring] the FDA's strictest regulation"). Class III devices are intended "for a use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health, or ... presents a potential unreasonable risk of illness or injury." 21 U.S.C. § 360c(a)(1)(C)(ii)(I)–(II). Before a Class III medical device enters the market, the device's manufacturer must obtain FDA approval. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 477, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). The FDA grants premarket approval if it receives "'reasonable assurance' of the de-

vice's 'safety and effectiveness.'" *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 318, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008) (quoting § 360e(d)). After obtaining premarket approval, the manufacturer may not "make, without FDA permission, changes ... that would affect safety or effectiveness." *Riegel*, 552 U.S. at 319, 128 S.Ct. 999 (citing § 360e(d)(6)(A)(i)). Medical devices that are "substantially equivalent" to existing devices submit to a more limited form of evaluation called § 510(k) premarket notification, which refers to the original section of the MDA describing this review process. *Lohr*, 518 U.S. at 478, 116 S.Ct. 2240. If the FDA determines that the device in question is "substantially equivalent" to one that is already in existence, then the device satisfies the § 510(k) approval requirements and may be marketed without additional assessment. *Id.*

The Court ordered Plaintiffs to replead their First Amended Complaint, which had complied with Form 18, a now defunct form, because "amendments to the Federal Rules of Civil Procedure abrogated Form 18 in favor of the more stringent pleading requirements of Federal Rule of Civil Procedure 8." *See* Order Granting Defs.' Mots. to Dismiss 8, July 12, 2016, ECF No. 90. Plaintiffs, for the first time in any of their pleadings, enumerated V2, V3, and V4 in their Second Amended Complaint. Second Am. Compl. 4–5.

Defendants then filed the instant Motion arguing that the Court lacks jurisdiction due to justiciability concerns. Mot. 10.

## II. LEGAL STANDARD

### A. Federal Circuit

■ At the outset, the Court recognizes that Federal Circuit law governs case or controversy issues involving declaratory judgment determinations about patent infringement or validity. *See Adenta GmbH v. OrthoArm, Inc.*, 501 F.3d 1364, 1368 (Fed. Cir. 2007).

### B. Motion to Dismiss For Lack of Subject–Matter Jurisdiction Standard of Review

Although Defendants submit a Motion seeking summary judgment, the Court construes the Motion as a motion to dismiss for lack of subject-matter jurisdiction. *See United States v. One 1988 Dodge Pickup*, 959 F.2d 37, 39 (5th Cir. 1992) ("[I]t is clear that the proper characterization of the motion for these purposes is not determined by the label that the motion bears.") (analyzing Federal Rules of Civil Procedure 55 and 60). Consequently, the Court will analyze Defendants' Motion as a Rule 12(b)(1) motion. *See id.*

■ Rule 12(b)(1) requires dismissal of a complaint for "lack of subject-matter jurisdiction" if the Court lacks statutory or constitutional power to adjudicate the case.

Federal courts are courts of limited jurisdiction, which without jurisdiction conferred by statute, lack the power to adjudicate claims. *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "In general, where subject matter jurisdiction is being challenged, the trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004).

■ The Court may determine the issue of subject matter jurisdiction based upon "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

## III. DISCUSSION

■ The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The declaratory judgment plaintiff must establish that this requirement was satisfied at the time the complaint was filed—post-filing conduct is not relevant." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009). "The Act creates a remedy, not an independent source of subject-matter jurisdiction." *Sandoz Inc. v. Amgen Inc.*, 773 F.3d 1274, 1277 (Fed. Cir. 2014) (internal citation omitted). "Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or aban-

doning that which he claims a right to do." *SanDisk Corp. v. STMicroelectronics, Inc.,* 480 F.3d 1372, 1381 (Fed. Cir. 2007).

 In adjudicating patent matters, courts employ "all the circumstances" standard to determine whether a declaratory-judgment plaintiff has presented a case of sufficient "immediacy and reality." *See MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007). "While a declaratory judgment plaintiff is no longer required to demonstrate a reasonable apprehension of suit, such a showing remains sufficient to establish jurisdiction." *Arkema Inc. v. Honeywell Int'l, Inc.,* 706 F.3d 1351, 1358 n.5 (Fed. Cir. 2013) (internal citation omitted).

██ Given the *MedImmune's* "all the circumstances" standard, the Court must determine (1) whether the patentee has engaged in "conduct that can be reasonably inferred as demonstrating intent to enforce a patent," *Hewlett–Packard Co. v. Acceleron LLC,* 587 F.3d 1358, 1363 (Fed. Cir. 2009), and (2) whether the controversy is "immediate," and (3) and "real.'" *See Sandoz Inc.,* 773 F.3d at 1277.

██ "In the trial court, of course, a party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy." *MedImmune,* 549 U.S. at 144, 127 S.Ct. 764 (internal citation and quotation marks omitted).

Even though Plaintiffs attempt to conflate jurisdiction involving three distinct products—V2, V3, and V4—the Court must analyze each on their own. *See Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.,* 363 F.3d 1361, 1374 (Fed. Cir. 2004). "To do otherwise would risk issuing an advisory opinion on one product—or on a method using that product—based on an actual controversy involving another product." *Id.*

## A. Intent to Enforce Patent

As previously noted, "Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *SanDisk Corp.,* 480 F.3d at 1381. The Federal Circuit has never required a patent-owner to reference "particular products or product line as potentially infringing" when asserting the patent-owner's patent rights. *See Asia Vital Components Co. v. Asetek Danmark A/S,* 837 F.3d 1249, 1254 (Fed. Cir. 2016).

### 1. V2: In Existence at the Time Plaintiffs Filed their Original Complaint

██ The Court may reference "the complaint supplemented by the undisputed facts evidenced in the record" when determining whether it has subject-matter jurisdiction. *See Walch v. Adjutant General's Dept. of Texas,* 533 F.3d 289, 293 (2008). Here, Defendants' counsel sent Plaintiff Medcomp the July 2015 Letter—three months before Plaintiffs filed the instant action. *See* Second Am. Compl. Ex. C, at 1. In the July 2015 Letter, Defendant Osiris requested information regarding Plaintiff Medcomp's "efforts to obtain FDA 510k approval [sic] this product and *any new products derived* from the efforts of [Defendant] Garcia, in whole or in part." *Id.* (emphasis added). Consequently, Plaintiffs allege that Defendant Garcia accused Plaintiff Medcomp of "infringing the '398 patent" on two different occasions. *See* Second Am. Compl. 6.

Although Plaintiffs' Original Complaint fails to specify which product they claim does not infringe on the '398 patent, the Court understands Plaintiffs' Original Complaint to be directly referencing V2— the only one of Plaintiffs' products which

existed at the time of the Original Complaint. *See* Mot. Exs. 7–8. Indeed, Plaintiffs' Original Complaint limited the scope of the non-infringing product in the singular: "The [Plaintiff] MedComp *product . . .* does not infringe any valid claim of the '398 patent." *See* Original Compl. 5 (emphasis added). Although Plaintiffs' Original Complaint complied with the since-abrogated Form 18, Plaintiffs were still "required to make allegations that equal or exceed the level of specificity required by Form 18 of the Federal Rules of Civil Procedure" with "regard to declaratory judgment claims of direct non-infringement." *See Intel Corp. v. Future Link Sys., LLC*, No. CV 14–377–LPS, 2015 WL 649294, at *13 (D. Del. Feb. 12, 2015); *see also PageMelding, Inc. v. ESPN, Inc.*, NO. C 11–06263 WHA, 2012 WL 3877686, at *3 (N.D. Cal. Sept. 6, 2012) (noting that a party's declaratory relief claim in compliance with Form 18 "falls short" of Rule 8). If V3 or V4 existed at the time Plaintiffs filed their Original Complaint, Plaintiffs could have used the plural form of "product" to indicate that they were seeking a declaration that more than one of their products did not infringe upon the '398 Patent. However, Plaintiffs apparently employed the singular form of "product" because V2 was their only functioning prototype. *See* Mot. Exs. 7–8.

Nevertheless, in light of the July 2015 Letter and the two Defendant Garcia accusations, Defendants' actions demonstrate that they have "engaged in a course of conduct that shows a preparedness and a willingness to enforce its patent rights" against Plaintiffs' V2 product. *See San-Disk*, 480 F.3d at 1383. Thus, this factor weighs in favor of Plaintiffs.

### 2. V3 and V4: Not in Existence at the Time Plaintiffs Filed their Original Complaint

Defendants contend that they were unaware of the existence of V3 or V4 when Plaintiffs filed their declaratory action. Mot. 3. In turn, Plaintiffs rely on two propositions to establish a justiciable controversy: (1) a patent-owner need not reference particular product as potentially infringing; and (2) an improvement design can create justiciability even where the original dispute involved only designs of a progenitorial product. Resp. 10–11.

Plaintiffs' first proposition is based on the recently issued Federal Circuit opinion. *See* Resp. 10–11 (citing *Asia Vital*, 837 F.3d at 1249). In *Asia Vital*, the declaratory-judgment plaintiff filed a complaint against the defendant patent-owner for two products "identified as the K7 and K9 products" in the complaint—both of which "had completed prototype products." *Id.* at 1251. The *Asia Vital* court held that the patent-owner need not identify "particular products or product line as potentially infringing" when asserting the patent-owner's patent rights to create a justiciable controversy. *Id.* at 1254.

As a result, "[t]he question of jurisdiction does not turn on [Defendants'] knowledge of the specific [V3 or V4] products or whether [Defendants] specifically alleged that the [V3 or V4] products infringed the asserted patents. *See id.* (internal quotation marks omitted). "[I]nstead, the question is whether, under all the circumstances, [Defendants'] actions can be reasonably inferred as demonstrating intent to enforce a patent." *See id.* (internal quotation marks omitted). "A *specific* threat of infringement litigation by the patentee is not required to establish jurisdiction." *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1348 (Fed. Cir. 2011) (emphasis added).

Yet, Plaintiffs' arguments are inapposite for two reasons. First, Plaintiffs in this case, unlike the declaratory-plaintiff in *Asia Vital*, did not specify V3 and V4 in their Original Complaint because these

prototypes did not exist. *See Intel Corp.,* 2015 WL 649294, at *13. Second, Plaintiffs stretch the holding in *Asia Vital.* Although a patent-owner need not specify a particular product when asserting its patent rights, the patent-owner can only assert its patent rights against a product that exists at the time that the declaratory-judgment plaintiff filed suit. *See Matthews Int'l Corp. v. Biosafe Eng'g, LLC,* 695 F.3d 1322, 1331 (Fed. Cir. 2012) ("It has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought.") (internal citations and quotation marks omitted).

Plaintiffs' second proposition that "improvement designs" create a "justiciable controversy even where the original dispute involved only designs for the progenitor" is similarly without merit. *See* Resp. 10. Plaintiffs rely on an out-of-circuit-district-court case from 1968 for this proposition. *See id.* (citing *Printing Plate Supply Co. v. Curtis Pub. Co.,* 278 F.Supp. 642 (E.D. Pa. 1968)). In *Printing Plate,* a patent-owner sued a company for infringing on products that had already been patented. *See* 278 F.Supp. at 644. In response, the company counterclaimed and sought a declaratory judgment on more patents than those contained in the patent-owner's original complaint. *Id.* The *Printing Plate* court held that it was "serving the policy interest of expediting litigation" by retaining jurisdiction over the additional patents. *Id.* at 648.

In contrast, the Court looks to the more recent—and more importantly, the binding—Federal Circuit case *Sierra Applied Sciences., Inc. v. Advanced Energy Industries, Inc.,* 363 F.3d 1361, 1378–79 (Fed.

Cir. 2004).[3] In *Sierra,* the declaratory-judgment plaintiff created two relevant products: a Coleman 150 kW power supply ("Coleman Prototype) and a Billings 150 kw power supply ("Billings Prototype"). 363 F.3d at 1364–65.[4] The declaratory-judgment plaintiff first attempted to make the Coleman Prototype. *Id.* at 1365. After the Coleman Prototype was unsuccessful, the declaratory-judgment plaintiff "started work on a *second* version of a 150kW power supply," which would become the Billings Prototype. *Id.* (emphasis added). The declaratory-judgment plaintiff depicted the Coleman Prototype in its complaint. *Id.* at 1371.

The *Sierra* court did not consider that an "improvement design" could create a justiciability issue. *See id.* at 1368. Rather, the *Sierra* court analyzed each product separately because each was "distinct" and "technologically different." *Id.* at 1374. Similarly, Plaintiffs found V3 and V4 to be "distinct" and "technologically different" from V2 because V3 and V4 had a "self-locking" mechanism. *See* Technical Tutorial Hr'g Tr. 33. However, unlike the declaratory-judgment plaintiff in *Sierra,* Plaintiffs did not depict V3 or V4 in their Original Complaint. *See Sierra,* 363 F.3d at 1371.

Regarding V3 and V4, the Court concludes that the factor of intending to enforce the patent weighs against Plaintiffs.

### B. Immediacy

 The Federal Circuit "assessed 'immediacy' by considering how far in the future the potential infringement is, whether the passage of time might elimi-

---

**3.** While the Court acknowledges that *Sierra* was decided under the now defunct two-part "reasonable apprehension of suit" test, "the *Sierra* decision is nonetheless instructive in analyzing the factually analogous situation of the present case." *See FieldTurf USA, Inc. v. Sports Const. Grp., LLC,* 507 F.Supp.2d 801,

806 (N.D. Ohio 2007) (similarly relying on *Sierra*).

**4.** The Coleman and Billings Prototypes were named after the lead engineers on each product. *Sierra,* 363 F.3d at 1365.

nate or change any dispute, and how much if any harm the potential infringer is experiencing, at the time of suit, that an adjudication might redress." *Sandoz Inc.,* 773 F.3d at 1278. "[A]lthough a party need not have engaged in the actual manufacture or sale of a potentially infringing product to obtain a declaratory judgment of non-infringement, there must be a showing of 'meaningful preparation' for making or using that product." *Cat Tech LLC v. TubeMaster, Inc.,* 528 F.3d 871, 881 (Fed. Cir. 2008). Generally, the greater the length "between the date on which the *complaint was filed* and the date on which potentially infringing activities will begin . . . . the more likely the case lacks the requisite immediacy." *Sierra,* 363 F.3d at 1378–79 (emphasis added).

Courts have regularly found that the immediacy requirement is not satisfied when there is prolonged delay between the filing of the complaint and the potentially infringing activity. *See e.g., Telectronics Pacing Sys., Inc. v. Ventritex, Inc.,* 982 F.2d 1520, 1525–27 (Fed. Cir. 1992) ("At the commencement of the suit, [the] device had only recently begun clinical trials, and was years away from potential FDA approval," and "[t]here was no certainty that the device when approved would be the same device that began clinical trials[;]" therefore, "the district court could have correctly ruled that the case lacked sufficient immediacy and reality to meet the actual controversy requirement."); *Lang v. Pacific Marine & Supply Co.,* 895 F.2d 761, 764–65 (Fed. Cir. 1990) (holding that immediacy was absent where the ship at issue would not be ready for at least nine months and the owners of the ship had not engaged in any marketing activities).

### 1. V2, V3, and V4: Meaningful Preparation

▮ The Court recognizes that Plaintiffs have undertaken "meaningful preparation" in developing its V2, V3, and V4

Huber needles. As Plaintiff Medcomp's President attested, Plaintiff Medcomp has invested over $1 million in "designing, developing, preparing to manufacture, and protecting the intellectual property of these [V2, V3, and V4] *products*." Resp. 8 (emphasis added); *see also* Decl. of Timothy M. Schweikert, May 5, 2016, ECF No. 73–2.

To further substantiate their assertions, Plaintiffs are ready to make a "couple hundred thousand" V4 units. Resp. 7; *see also BP Chemicals Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 978 (Fed. Cir. 1993) (holding that "[w]hile [plaintiff] may not have the present ability to market [its product], it had embarked upon a protracted and costly process of obtaining regulatory approval").

Accordingly, the Court concludes that Plaintiffs have undertaken meaningful preparation as to V2, V3, and V4, which weighs in favor of finding that the immediacy requirement is met.

### 2. V2 and V3: "Abandonment"

▮ Despite the meaningful preparation, Defendants argue that Plaintiffs fail to satisfy the immediacy requirement because they have "abandoned" V2 and V3. Mot. 12–13.

▮ "Once a development effort has been wholly abandoned, it can no longer be the basis for an 'intent to engage' case or controversy." *Sierra,* 363 F.3d at 1377. Intent to engage an actual controversy "must be extant at all stages of review, not merely at the time the complaint is filed." *Amana Refrigeration, Inc. v. Quadlux, Inc.,* 172 F.3d 852, 855 (Fed. Cir. 1999) (quoting *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975)).

▮ During a deposition, Plaintiffs' Project Management Director allegedly suggested that Plaintiffs were no longer

seeking to bring V2 and V3 into market. *See* Mot. Exs. 2, 4. Defendants request that the Court treat the Project Management Director's statements as judicial admissions. *See id.*[5]

Here, Plaintiff Medcomp's Project Management Director's statements that Plaintiffs have "abandoned" V2 and V3 do not constitute a judicial admission. *See Lindquist*, 656 F.Supp.2d at 698; *see also* Mot. Exs. 2, 4. Indeed, Plaintiffs Third Complaint seeking a declaratory judgment as to V2 and V3—filed a mere four days before the deposition—contradicts Defendants' characterization of the Project Management Director's statement. *See* Second Am. Compl. 4–5. Of course, Plaintiffs can seek a declaratory judgment for a product that it does not intend to sell. *See* 35 U.S.C. § 271(a) ("[W]hoever without authority *makes*, uses, offers to sell, or sells any patented invention, ... infringes the patent." (emphasis added)).

Consequently, the Court disagrees with Defendants' assertion that Plaintiffs fail to satisfy the immediacy requirement because they have "abandoned" V2 and V3.

### 3. V4: FDA Approval

[27, 28] Defendants argue that V4 lacks immediacy because Plaintiffs recently filed a 510(k) application for V4—ten months after the Original Complaint. *Compare* Original Compl. (filed on October 19, 2015) *with* Resp. Ex. 9 (V4 510(k) application filed on August, 19, 2016). While FDA approval in a vacuum does not satisfy immediacy, FDA approval does bolster a finding that immediacy is present. *Cf. Shoulder Innovations, LLC v. Ascension Orthopedics, Inc.*, No. CIV.A. 11–810 JEI, 2012 WL 2092379, at *3 (D. Del. June 8, 2012) ("Claims that FDA approval is required for a district court to rule on a declaratory judgment action have been continually rejected."). Still, the declaratory-judgment plaintiffs in these cases had filed either their patent or FDA application *before* filing their declaratory action. *See Shoulder Innovations, LLC*, 2012 WL 2092379, at *1 (declaratory-judgment plaintiff filed the declaratory action two months after filing its patent application); *Biogen, Inc. v. Schering AG*, 954 F.Supp. 391, 393–95 (D. Mass. 1996) (declaratory-judgment plaintiff filed the declaratory action one year after filing its FDA application); *Infinitech v. Vitrophage, Inc.*, 842 F.Supp. 332, 333–34 (N.D. Ill. 1994) (declaratory-judgment plaintiff filed the declaratory action two years after filing its FDA application).

Notably, Plaintiffs elected to pursue an operational and marketable V4 after filing their Original Complaint by filing for the following: a provisional patent five months later, a trademark over four months after the filing of the provisional patent, and a 510(k) FDA application one month after the filing of the trademark. *See* Mot. Exs. 9–10; Notice 132–208. Therefore, Plaintiffs filed the 510(k) application ten months after filing their Original Complaint. Plain-

---

**5.** A judicial admission is a "formal concession in the pleadings or stipulations by a party or counsel, that is binding on the party making them" and which must have been made "intentionally as a waiver." *Martinez v. Bally's La.*, 244 F.3d 474, 476 (5th Cir. 2001). Because Plaintiffs are two different organizations, these entities must "designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." *See* Fed. R. Civ. Pro. 30(b)(6). "A Rule 30(b)(6) deposition is admissible against the party designating the representative but is not 'binding' on the entity for which the witness testifies in the sense of preclusion or judicial admission." *See Lindquist v. City of Pasadena, Tex.*, 656 F.Supp.2d 662, 698 (S.D. Tex. 2009), *aff'd sub nom. Lindquist v. City of Pasadena Texas*, 669 F.3d 225 (5th Cir. 2012); *see also* 8A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2103 (3d ed. 2016).

tiffs' ill-timed energies to pursue an operational V4 several months after filing their Original Complaint falls woefully short in light of the Fifth Circuit's holding that "post-filing conduct is not relevant" to establish an actual controversy. *See Vantage Trailers, Inc.*, 567 F.3d at 748 (analyzing a declaratory judgment patent case). Plaintiffs have only recently manufactured a prototype of V4—well after the filing of the Original Complaint—and have no potential customers. *Cf. Asia Vital*, 837 F.3d at 1255 (finding that the declaratory-plaintiff had met the immediacy factor by providing "undisputed allegations that it ha[d] manufactured prototypes, ha[d] potential customers, and ha[d] a sufficiently immediate interest to request a license to clear the path for its intended entrance into the U.S. market"). More troubling, Plaintiffs cannot provide the Court with a timetable of when V4 will be operational. *See Telectronics Pacing Sys., Inc.*, 982 F.2d at 1525–27 (noting that "[t]here was no certainty that the device when approved would be the same device that began clinical trials").

Thus, the Court finds that the immediacy circumstance weighs against Plaintiffs for V4 because they decided to file the 510(k) application, trademark, and provisional patent months after filing suit.

## C. Reality

▮▮ The federal circuit "ha[s] assessed "reality" by examining any uncertainties about whether the plaintiff will take an action that will expose it to potential infringement liability and, if so, exactly what action." *Sandoz Inc.*, 773 F.3d at 1278. "[T]he reality requirement is often related to the extent to which the technology in question is 'substantially fixed' as opposed to 'fluid and indeterminate' at the time declaratory relief is sought." *Cat Tech LLC*, 528 F.3d at 882 (quoting *Sierra*, 363 F.3d at 1379).

The Court finds the *Sierra* case instructive. In *Sierra*, the declaratory-judgment plaintiff had begun development of a potentially infringing power supply at the time of suit. *Id.* at 1380. The Federal Circuit concluded that no immediate and real controversy existed: "Because the design was fluid on the date the complaint was filed, it was impossible to determine—on that date—whether any eventual design . . . would infringe [the] patents." *Id.*

### 1. V2 and V3: Plaintiffs Have Not Met Their Burden

▮▮ Given that Plaintiffs have the burden of proving justiciability, the Court cannot say whether the V2 or V3 product satisfies the "immediate" circumstance. *See MedImmune*, 549 U.S. at 144, 127 S.Ct. 764 ("In the trial court, of course, a party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy" (internal citation and quotation marks omitted)).

While the Project Management Director testimony is not a judicial admission, it certainly undercuts the notion that Plaintiffs are currently seeking to continue to make V2 or V3—irrespective of whether Plaintiffs seek to bring V2 or V3 to market. *See* Mot. Exs. 2, 4. Ultimately, Plaintiffs have not met their burden that they "will take an action that will expose it to potential infringement liability" given the uncertainty surrounding the Project Management Director's testimony. *See Sandoz Inc.*, 773 F.3d at 1278.

Thus, this factor weighs against Plaintiffs.

### 2. V4: Plaintiffs Have Not Met Their Burden

▮▮ Plaintiffs cannot convey to the Court with certainty whether V4's preliminary plans at issue would be the final design for the alleged infringing activity. Above all, Plaintiffs have not educated the

Court on how static the V4 designs are. Plaintiffs cannot provide a timeframe when the FDA or the PTO will accept these applications or if these entities will require Plaintiffs to make changes to V4. In essence, Plaintiffs sought a declaratory judgment for a product that had not yet existed. To be sure, Plaintiffs continued to make improvements upon V2 and V3 until settling on the latest iteration: V4. *Cf. Asia Vital*, 837 F.3d at 1255 ("This is not the type of case where, at the time the complaint was filed, the accused products were far from being complete or operational and were susceptible to design changes, making it impossible to compare them against the asserted patents."). After all, this product was not finalized until after Plaintiffs filed the instant declaratory action.

Given that Plaintiffs have the burden of proving justiciability, the Court finds that they have failed to carry this burden. *See MedImmune*, 549 U.S. at 144, 127 S.Ct. 764. Accordingly, the Court concludes that Plaintiffs have failed to meet the reality requirement.

## IV. CONCLUSION

In sum, Plaintiffs have established that Defendants intended to sue for V2, that immediacy exists as to V2, but they have not carried their burden of demonstrating that a real controversy is present regarding V2.

As to V3, Plaintiffs have failed to establish that Defendants intended to sue for V3, have shown that immediacy exists as to V3, and have not satisfied their burden of demonstrating that a real controversy is present regarding V3.

As to V4, the product that Plaintiffs intend to sell, Plaintiffs have failed to demonstrate that Defendants intended to sue for V4, have not shown that immediacy exists as to V4, and have failed to satisfy

their burden of demonstrating that a real controversy exists as to V4.

Given that the *MedImmune*'s "all the circumstances" standard does not give greater weight to any one factor, the Court finds that Plaintiffs have failed to demonstrate that real controversy exists as to V2, V3, and V4.

As a result, the Court will deny as moot two outstanding motions as they both pertain to Plaintiffs' now-dismissed-declaratory action. *See* ECF Nos. 92, 99.

Accordingly, **IT IS ORDERED** that Defendants Osiris Medical, Inc. and Raul Garcia, Jr.'s "Corrected Motion for Summary Judgment ... Dismissing Plaintiffs' Second Amended Complaint with Prejudice for Lack of Subject Matter Jurisdiction under Article III of the U.S. Constitution" (ECF No. 116) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs Medical Components, Inc. and Martech Medical Products, Inc.'s "Motion to Strike Defendant Osiris Medical, Inc.'s Untimely *Markman* Pre–Hearing Statement..." (ECF No. 92) is **DENIED AS MOOT.**

**IT IS FINALLY ORDERED** that Defendant Osiris Medical, Inc.'s "Motion to Compel Document Discovery Responses from Plaintiffs" (ECF No. 99) is **DENIED AS MOOT.**