NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GALEN J. SUPPES,**

*Plaintiff-Appellant*

**v.**

**KATTESH V. KATTI, CHRISTOPHER M. FENDER,**

*Defendants-Appellees*

---

2017-1142

---

Appeal from the United States District Court for the Western District of Missouri in No. 2:16-cv-04235-MDH, Judge M. Douglas Harpool.

---

Decided: October 3, 2017

---

GALEN J. SUPPES, Columbia, MO, pro se.

HEIDI DOERHOFF VOLLET, Cook, Vetter, Doerhoff & Landwehr, P.C., Jefferson City, MO, for defendants-appellees.

---

Before NEWMAN, WALLACH, and CHEN, *Circuit Judges.*

PER CURIAM.

Galen J. Suppes, proceeding pro se, appeals from the final judgment of the United States District Court for the Western District of Missouri (district court) dismissing his complaint for lack of jurisdiction. We have liberally construed Mr. Suppes's arguments on appeal. We conclude, as did the district court, that the Constitution and the Patent Act do not preclude or preempt the types of contract Mr. Suppes entered into with his former employer. We thus *affirm* the district court's dismissal of his complaint.

## BACKGROUND

Mr. Suppes was formerly employed as a professor of chemical engineering at the University of Missouri (University). When hired, Mr. Suppes entered into an employment agreement with the University which specified that his employment was subject to the rules, orders, and regulations of the University. These rules, orders, and regulations include statements that the University "shall have ownership and control of any Invention or Plant Variety developed in the course of the Employee's service to the University." University of Missouri Collected Rules and Regulations § 100.D.1.a. "Invention" is defined within these regulations as including both the "[c]onception of the idea" and "[r]eduction to practice of the inventive concept." *Id.* § 100.C.7.

Over the course of his employment, Mr. Suppes became aggrieved when the University declined to file patent applications for certain of his ideas, yet simultaneously prohibited him from filing his own patent applications and, in cases where he did file his own applications, required him to assign those applications to the Universi-

ty.[1]  Mr. Suppes thus filed a complaint for declaratory judgment against certain University employees in the district court alleging violations of his constitutional rights.  Specifically, Mr. Suppes asserted the following counts: (1) declaratory judgment of violation of his Tenth Amendment rights in that the University exercised power reserved by the Constitution to the States or the people; (2) declaratory judgment of violation of Article I of the Constitution and his Fourteenth Amendment rights in that the University "stifled the progress of science by selectively enforcing punitive action against the Plaintiff" and violated "Congress-specified *quid pro quo* requirements of Patent Law"; (3) declaratory judgment of violation of his Fifth Amendment rights in that the University demanded assignment of inventions created by Mr. Suppes and patent applications filed by Mr. Suppes without just compensation; (4) unilateral removal of several ongoing Missouri state law cases to the district court; and (5) declaratory judgment of damages up to $7.5 million.

The district court dismissed Mr. Suppes's complaint with prejudice for lack of subject matter jurisdiction.  *See Suppes v. Katti*, No. 2:16-CV-04235-MDH, 2016 WL 6090971, *1 (W.D. Mo. Oct. 18, 2016).  In its analysis, the district court liberally construed all of Mr. Suppes's allegations as being brought under 42 U.S.C. § 1983 in order to give his complaint effect.[2]  Although Mr. Suppes

---

[1]    In response to Mr. Suppes's unilateral filing of patent applications without the knowledge or consent of the University, the University filed suit against Mr. Suppes in the state courts of Missouri alleging, *inter alia*, breach of contract.  That litigation is not at issue here.

[2]    Section 1983 creates a private right of action when a "deprivation of any rights, privileges, or immuni-

framed his complaint as arising under federal and constitutional law, the district court concluded that the parties' true dispute is one of state contract law.

As to Count I, the district court cited *New York v. United States*, 505 U.S. 144, 156–57 (1992), for the principle that the Tenth Amendment acts solely as a restraint on the power of Congress, and thus is inapplicable to the University, an instrumentality of the State of Missouri. *See Suppes*, 2016 WL 6090971, *3.

As to Count II, the district court interpreted Mr. Suppes's argument to be that the University had, in some manner, violated Article I, Section 8, clause 8 of the Constitution, which states that that Congress shall have power "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." *See Suppes*, 2016 WL 6090971, *3. The district court observed that Mr. Suppes argued that his "Inventive Thought"—inventions made in the course of his employment but not yet the subject of a patent or patent application—was protected by the Constitution from a demand for assignment by the University. The court found this question to be resolved by our opinion in *Regents of University of New Mexico v. Knight*, 321 F.3d 1111 (Fed. Cir. 2003). In that case, a professor at the

---

ties secured by the Constitution and laws" occurs "under color" of state law. 42 U.S.C. § 1983. The "essential elements to a § 1983 action" are "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

University of New Mexico argued that the Constitution and the Patent Act—in particular, 35 U.S.C. § 261—preempted any private contract for assignment of rights to an invention by vesting patent rights in the inventor. *New Mexico*, 321 F.3d at 1118. We rejected that argument, holding that Section 261's explicit contemplation of assignment by the inventor allowed for such contracts. *Id.* at 1119. Thus, the district court here rejected as meritless Mr. Suppes's contention that the Constitution bars an inventor from contractually assigning his rights to an invention to another. *See Suppes*, 2016 WL 6090971, *3.

As to Count III, the district court held, based on the same authority, that because contracts that require assignment of patent rights are not presumptively invalid due to the Constitution or federal law, the requirement of assignment to the University was not a taking without just compensation. *See Suppes*, 2016 WL 6090971, *3.

As to Counts IV and V, the district court held that seizing jurisdiction of a state law case or entertaining a naked claim for damages without a supporting federal cause of action were both beyond its power. *See Suppes*, 2016 WL 6090971, *4.

Mr. Suppes now appeals dismissal of his Section 1983 counts, arguing that the district court did not adequately consider "Case Law" pertaining to his "Inventive Thought," which he characterizes as a different topic than patent law per se. He argues that Article I, Section 8, clause 8 "is both a grant of power and a limitation," and thus sets limits on both "ownership of 'inventions' without time limits" and "constructs of the mind (aka unpatented inventions) that have not met legal standards to qualify as personal property that may be owned or assigned." Appellant Suppl. Br. 2. Mr. Suppes further argues that the University's policies violate the Constitution because they do not "promote the Progress of Science" in that they

prevent him from innovating by denying his ability to receive patents on his inventions.  U.S. Const. art. I, § 8, cl. 8.

## ANALYSIS

### A.  Appellate Jurisdiction

As a threshold matter, we have jurisdiction over this appeal only if it "arises under" patent law.  28 U.S.C. § 1295(a)(1).  An action "arises under" patent law when it presents an issue of federal patent law which is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258–59 (2013).  Mr. Suppes's appeal raises the issue of whether 35 U.S.C. § 261 preempts assignment contracts which allow for the assignment of inventions prior to any effort to seek a patent on those inventions.  This issue is actually disputed, substantial to the resolution of Mr. Suppes's appeal, and is capable of narrow resolution without the disruption of Mr. Suppes's state law claims and suits.  We thus conclude that we, and not one of our sister circuits, have jurisdiction over Mr. Suppes's appeal.

### B.  Subject Matter Jurisdiction

We review a district court's dismissal for lack of subject matter jurisdiction de novo and any underlying factual findings for clear error.  *Asia Vital Components Co. v. Asetek Danmark A/S*, 837 F.3d 1249, 1252 (Fed. Cir. 2016).

Mr. Suppes appears to make three main arguments: (1) that the Constitution, either alone or in conjunction with federal patent law, reserves the rights of inventions for which patents are not yet sought to the inventors; (2) that the Constitution's grant of authority to create patents "for a limited time" serves as a limit on the amount of time for which the University can maintain

rights to his inventions; and (3) that a contract which allows an assignee of inventions to decline to patent those inventions violates the Constitution by failing to "promote the Progress of Science." U.S. Const. art. I, § 8, cl. 8.

As to Mr. Suppes's first constitutional argument, the Constitution, standing alone, grants the power to Congress to "secur[e] for limited times to . . . inventors the exclusive right to their . . . discoveries." *Id.* Any rights Mr. Suppes has in his inventions are thus subject to Congress's implementation of the Constitution by statute. 35 U.S.C. § 261 provides that "[a]pplications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing." We have previously held in *New Mexico* that while it is true that, under Section 261, patents vest in the inventor by operation of law, contracts assigning interests in patents are not preempted by Section 261. 321 F.3d at 1118–19 (noting that Section 261 explicitly provides for the assignment of patent interests). It is similarly the case that a contract assigning an interest in a patent not yet filed is not preempted by Section 261, because such a contract would be endorsed by Section 261 once the patent application is filed, and Section 261 otherwise says nothing about the matter. The allocation of interests prior to the filing of a patent application is thus a matter of state contract law and is not preempted by the Patent Act.

As to Mr. Suppes's second constitutional argument, the Constitution's limitation of patent rights to "a limited time" refers to the allocation of rights vis-à-vis the inventor and the public. That is, inventors are awarded a limited monopoly through a patent grant to incentivize their creative effort, but after that limited time expires, the invention becomes available to the public. This principle has nothing whatsoever to do with the allocation of rights between inventors and patent assignees. As above, that allocation is purely a matter of state contract law.

As to Mr. Suppes's third constitutional argument, the Constitution provides that "*Congress* shall have power . . . [t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8 (emphasis added). The determination of whether a statute prohibiting the assignment of "inventive thoughts" would promote the Progress of Science is therefore, at least initially, allocated to Congress by the Constitution. To the extent that Mr. Suppes is arguing that the contract is void as a matter of public policy, that is once again a matter of state contract law.

## CONCLUSION

For the foregoing reasons, we determine that there is no federal question jurisdiction pursuant to the Constitution or the Patent Act. We thus *affirm* the opinion of the district court.

## **AFFIRMED**

### COSTS

No costs.